Filed 12/5/14  P. v. Dobbs CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>STEVEN RAY DOBBS,<br><br>  Defendant and Appellant. | C074255<br><br>(Super. Ct. No. P12CRF0414) |

A jury found defendant Steven Dobbs guilty of five counts of arson (Pen. Code, § 451, subds. (b)-(d))[1] after he set fire to an inhabited RV, a shed, an uninhabited RV, a trailer, and a truck.  The trial court sentenced him to six years four months in prison and ordered him to pay various fines and fees, including $460 for the cost of the probation report (§ 1203.1b) and $5,000 to reimburse the county for the cost of his court-appointed

---

[1]  Further undesignated statutory references are to the Penal Code.

attorney (§ 987.8). On appeal, defendant contends it was error: (1) to admit evidence that he was violent with his wife; (2) not to dismiss counts 2 through 5; (3) to find he had an ability to pay the cost of the probation report; and (4) to order him to pay attorney fees.

We find merit only in the last two contentions. We strike the orders to pay the cost of the probation report and court-appointed counsel. Otherwise, we shall affirm.

## FACTS

Defendant lived with his wife Phyllis in a small RV on rural property in Kelsey that his son David owned.[2] The property was a dirt pad that had been cleared and contained no brush or debris. The property had a shed where David stored tools, a larger RV -- into which defendant and Phyllis were in the process of moving -- and their fifth wheel trailer and pickup truck. David's pickup truck was also there.

David was upset because defendant had secured a restraining order against him. The day before the fire, David told his parents he wanted them off his property. In response, defendant threatened to burn the property. Defendant had previously threatened to burn the car that David had given his parents.

On August 8, 2012, defendant and Phyllis went to Auburn. On the way back they stopped at a store where Phyllis bought gas and defendant bought a beer and a BIC lighter. They had been arguing about defendant's treatment of the car and an incident where defendant embarrassed Phyllis in front of others. When they returned home after 3:00 p.m., Phyllis told defendant she was leaving him and going to stay with her sister. Defendant did not want her to leave; he tried to set fire to the seat of the car. Phyllis took two of their dogs and drove away. In past arguments, defendant had threatened to burn the RV.

---

[2] Because defendant, his wife, and son share the same surname, we refer to his wife and son by their first names to avoid confusion.

A neighbor a half mile away heard defendant and Phyllis argue and heard Phyllis ask, "What, are you going to start a bonfire?" She heard Phyllis call the dogs and say, "We got to go call 911." Then the neighbor heard a boom and pops and saw a big plume of smoke. She called 911 and spoke with Cal Fire.

Firefighters saw a single column of black smoke. When they arrived, the entire property was engulfed in fire.

Another neighbor called David and told him about the fire. David called defendant who told him, "I just burned the whole fucking place down" and "I'm burning it down, bitch." David recorded this call and it was played to the jury.

Firefighters and police found defendant at the fire scene. Officers found a cell phone and three lighters on him. Two pieces of luggage were nearby. A red suitcase contained defendant's clothes and cologne, a photo album, and a notebook. A blue plastic bag contained paperwork, including the restraining order. Defendant appeared highly intoxicated and was limping and staggering. It was stipulated that his blood-alcohol level was later determined to be .27 percent.

After the fire, Phyllis described the scene; "It was all gone." She was able to salvage only her mother's ring and a few trinkets. Everything else had burned. Only David's truck had been spared.

An expert fire investigator opined that each of the five structures (shed, two RV's, trailer, and pickup truck) had been set on fire separately and intentionally. All five fires were started at close to the same time and accelerants had been used. Due to the smoke pattern of a single column of smoke, the absence of any blast or soot pattern, and the low wind, the expert testified it was not possible that the fire started accidentally and spread.

3

# DISCUSSION

## I

### *Evidence Defendant was Violent with his Wife*

Defendant contends the trial court erred in admitted evidence that defendant had been violent with Phyllis. He argues the People misstated David's character evidence in arguing for admission, and the evidence was cumulative to other evidence that Phyllis and David shaded their testimony to "cover" for defendant. Further, defendant contends the evidence "was far more prejudicial than probative."

A. *Background*

When the defense cross-examined David, counsel asked him how defendant sounded the day of the fires and David responded "highly intoxicated." When asked how defendant's speech was different when intoxicated, David said "he gets mean when he's intoxicated." Counsel asked, "When you say he gets mean, I mean, does he beat on you when he gets intoxicated?" David said no, "but just--it's almost like he yells at me or something." David testified defendant had been known to make nasty statements and false accusations, and lie when drunk.

At a bench conference, the People asked to be allowed to ask David about a battery against Phyllis, arguing defense counsel had opened the door about defendant's violence when he drinks. David had told investigators that defendant "had beaten his mother over this." The court ruled it would allow only one question as to whether David was aware of any violence against Phyllis. The court would limit the evidence "because this is [an Evidence Code section] 352 issue." The People argued the evidence was offered to impeach David who was trying to cover for defendant. The defense argued its questions were directed solely to violence against David, but the court disagreed with this characterization of the evidence.

The People asked David if he had said "no" when asked if defendant gets violent, or makes nasty statements or false allegations when drunk. David responded,

4

"Apparently, I said no." David responded no when the People asked if he was aware of any instances when defendant became violent with Phyllis. The People then asked if he had told sheriff's deputies that defendant had been violent with Phyllis. The defense objected and the court overruled the objection. David said defendant had been violent with Phyllis "in the past."

The jury was instructed that questions to David about defendant's propensity for violence "were permitted for the sole reason to impeach David Dobbs' credibility. The answer to those questions may not be used by you in any way as proof of Mr. Dobbs' guilt in this case."

B. *Analysis*

The admission of this evidence about defendant's violent propensity is troubling because it was based on the People's inaccurate representation of David's testimony. David did *not* testify about defendant's violence when he drank. David answered "yes," not "no," about defendant making nasty statements, false allegations, and lying. We note the evidence of defendant's violence was not especially significant in this case. The evidence was brief and never mentioned again; in particular, the People did not mention it in closing arguments. The People's case presented defendant as an arsonist, not a wife beater.

We need not determine whether the admission of this evidence was error because any error was clearly harmless given the overwhelming evidence that defendant committed arson. Defendant admitted his guilt in his call with David. He was found at the scene with three lighters and packed bags. Both Phyllis and David testified that defendant had previously threatened to burn property when he was drunk and angry. The neighbor heard Phyllis ask defendant if he was lighting a bonfire. The fire investigator provided expert testimony that five separate fires were intentionally set. On this record, there is not a reasonable probability that the result would have been different had the

5

disputed evidence not been admitted at defendant's trial. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II

### *Motion to Dismiss Counts 2, 3, 4, and 5*

Defendant contends the trial court erred in refusing to dismiss counts 2 through 5. Defendant was charged with and convicted of five counts of arson: count 1 was arson of an inhabited structure or property (§ 451, subd. (b)); count 2 was arson of a structure (*id.*, subd. (c)); and counts 3, 4, and 5 were arson of property of another (*id.*, subd. (d)). He contends these different subdivisions of section 451 do not describe different offenses, but are alternative penal provisions for the same offense. He contends counts 2 through 5 must be dismissed because there was only a single offense of arson.

A. *Background*

Before trial, defendant moved pursuant to section 995 to dismiss all but one arson count. He argued all the fires were one continuous act "pursuant to one intention, one general impulse, and one plan." The trial court denied the motion.

After the verdicts, defendant moved to strike counts 2 through 5, repeating the one plan-one purpose argument. The trial court found defendant had two objectives, to burn Phyllis's property and to burn David's property. The court struck counts 3, 4, and 5.

The People moved for reconsideration of the earlier ruling and to reinstate the complaint. The People argued the trial court dismissed three counts pursuant to section 1385, but the court failed to weigh the interests of the People in dismissing in the interests of justice. The trial court agreed it failed to consider the People's interests and concluded that the dismissal was an abuse of discretion. The court reinstated counts 3, 4, and 5.

In sentencing defendant, the court stayed the sentences on counts 3, 4, and 5 pursuant to section 654.

6

B.  *Law and Analysis*

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property."  (§ 451.)  " 'The arson statutes provide different levels of punishment, depending on the subject matter of the arson.  (§ 451.)  These statutory categories, in descending level of punishment, are:  (1) arson resulting in great bodily injury (five, seven, or nine years); (2) arson to 'an inhabited structure or inhabited property' (three, five, or eight years); (3) arson of a 'structure or forest land' (two, four, or six years); and (4) arson to other types of property (16 months, two, or three years).  (§ 451, subds. (a), (b), (c) & (d).)' "  (*People v. Labaer* (2001) 88 Cal.App.4th 289, 292.)  The different terms of imprisonment reflect the seriousness of the offense, particularly the potential for injury to human life.  (*People v. Green* (1983) 146 Cal.App.3d 369, 378.)

"A single crime cannot be fragmented into more than one offense.  [Citations.]"  (*People v. Rouser* (1997) 59 Cal.App.4th 1065, 1073 (*Rouser*).)  "The general jurisprudential considerations are the same as those disfavoring imposition of multiple punishments upon crimes arising out of a single transaction (Pen. Code, § 654), but there is a technical difference between them.  The issue here is 'identity of offenses as distinguished from the identity of transactions from which they arise.'  [Citation.]"  (*People v. Schroeder* (1968) 264 Cal.App.2d 217, 228.)  In *Rouser*, this court held that where the statute prohibited possession of " 'any controlled substances' " in prison, there was only a single offense where defendant possessed methamphetamines and heroin "at the same time and in the same place."  (*Rouser, supra,* 59 Cal.App.4th at p. 1073.)

In *People v. Ryan* (2006) 138 Cal.App.4th 360 (*Ryan*), defendant was convicted of four counts of forgery for signing another's name to two checks (§ 470, subd. (a)) and using or attempting to use each check to make a purchase (§ 470, subd. (d)).  In vacating two counts of forgery, the court held the various subdivisions of section 470 set out

7

"different ways of committing a single offense, i.e., forgery." (*Ryan, supra,* at p. 364.) There could be only one count of forgery as to a single instrument; because two checks were involved, two counts of forgery were proper. (*Id.* at pp. 371-372.)

This case is distinguishable from *Rouser* or *Ryan*. Here, defendant committed five separate acts of arson by intentionally and separately setting fire to five different pieces of property. The crime of arson is committed by setting fire to, burning, or causing to burn a specific type of structure, forest land, or property. Each separate structure or item of property that defendant set fire to represents a distinct injury that the arson statute was designed to prevent. (§ 451, subds. (b)-(d); see *People v. Fry* (1993) 19 Cal.App.4th 1334 [defendant convicted of four counts of arson for setting fire to four cars].) This conduct is vastly different from a single act of possession or two acts constituting forgery of a single instrument, as seen in *Rouser* and *Ryan.* The trial court did not err in refusing to dismiss counts 2, 3, 4, and 5.

III

*Probation Report Fee*

Defendant contends the trial court erred in finding he had the ability to pay the cost of the probation report and ordering him to pay that cost. Further, he contends he was not informed of his right to a judicial determination of his ability to pay and he never waived his right to such a determination.

A. *Background*

After the verdicts, defendant completed a statement of assets. He stated his only income was SSI disability and that was placed on hold after he was arrested. His wife was unemployed. He had no cash deposits. His only property was a 2001 Volkswagen Passat worth $8,000 to which his wife had title and a 1998 fifth wheel Road King trailer worth $10,000. He had no other assets; both he and his wife lost everything in the fires.

A psychological evaluation concluded that defendant was "an individual with significantly compromised functioning." The doctor found defendant's clinical

presentation "consistent with that of someone in an acute manic phase of a bipolar disorder" and believed defendant would require a caregiver when released from custody.

The probation report recommended that the court find defendant had the ability to pay the costs of the probation report in the amount of $460. In addition, the report recommended a restitution fine of $10,000, a court operations fee of $200, and a critical needs assessment of $150.

At sentencing, the court imposed these recommended fines and fees. It found defendant had the ability to pay the cost of the probation report in the sum of $460. Defense counsel challenged the finding of the ability to pay, noting defendant was on social security and there was no evidence of his ability to pay. The court responded, "Well, I think there were assets that the family had. I mean, I don't know that. If you can convince there were no assets or anything, why that's fine."

B. *Law and Analysis*

Where defendant is convicted of an offense and subject to a presentence report, the probation officer "taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of" the presentence report. (§ 1203.1b, subd. (a).) "The term 'ability to pay' means the overall capability of the defendant to reimburse the costs" and shall include defendant's present financial condition, his future (up to a year) financial position, his likelihood of obtaining employment, and other factors that might bear on defendant's ability to reimburse the county for costs. (*Id*., subd. (e).)

The People contend the trial court's finding of defendant's ability to pay was supported by substantial evidence because his declaration of assets showed he owned two vehicles valued at a total of $18,000. They rely in part on *People v. Hoover* (2011) 199 Cal.App.4th 1470 at page 1473, where the appellate court found defendant, who was granted probation, had the ability to pay $1,375 for a probation report at the rate of $30

9

per month based on his "possession of a cell phone and a car and living in an expensive area." They also rely on *People v. Phillips* (1994) 25 Cal.App.4th 62 at page 71 (*Phillips*), where the appellate court upheld the trial court's implied finding that defendant had the ability to pay a $300 probation report fee because defendant would be earning $1,600 before he began serving his eight-month jail term (a condition of probation), and had minimal fixed financial obligations and no one else whom he supported. The instant case is distinguishable from those cited by the People.

Here, defendant had no present income and no realistic probability of *any* future income. Unlike the defendants in *Hoover* and *Phillips*, who were granted probation, defendant faced a significant prison sentence. He was already obligated to pay over $10,000 in other fines and fees. The vehicles valued at $18,000 were community property, and therefore Phyllis had an equal interest in them. There was no evidence that she had any source of income and defendant declared she was unemployed. Defendant's declaration of assets indicated the vehicles were registered to her. Phyllis testified everything was in her name, and all their property was community property. They had been married 30 years, "what's his is mine. What's mine is his." Thus, defendant had nothing beyond two vehicles he shared with his wife, which is all that she had as well, because defendant had burned everything else of theirs to the ground. As Phyllis was the main victim of his crimes, it is particularly unfair to burden her further with the costs of these crimes. Insufficient evidence supported a finding that defendant had the ability to pay the fee at issue.

IV

*Order to Reimburse Cost of Court-Appointed Attorney*

Defendant contends the trial court erred in ordering him to reimburse the cost of court-appointed counsel because the court made no finding of defendant's ability to pay and there was no evidence to support such a finding. He further contends the court failed to give him notice or a hearing on his ability to pay these fees.

10

Section 987.8 permits a court to order a defendant to pay the cost of court-appointed counsel after a hearing to determine if defendant has the ability to pay. "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof." (§ 987.8, subd. (b).) "Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense." (§ 987.8, subd. (g)(2)(B).)

At sentencing, the trial court ordered the defendant to reimburse the County of El Dorado $5,000 for the cost of court-appointed counsel. Although defendant objected to the court's finding of an ability to pay, that objection was limited to the cost of the probation report.

The statute sets forth procedural requirements for the statutory imposition of attorney fees. The court is to make an ability-to-pay determination only after affording defendant notice and a hearing. (§ 987.8, subd. (b).) The court must make an express finding of unusual circumstances before ordering a state prisoner to reimburse his attorney. (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537.) Here, there was no compliance with either of these procedural requirements.

The People argue that defendant has forfeited this contention by failing to object specifically to the attorney fees. Defendant contends his objection to the finding of his ability to pay was sufficient to preserve this issue on appeal. Further, he contends no objection is required to preserve the issue for appeal, citing *People v. Viray* (2005) 134 Cal.App.4th 1186. In *Viray*, the appellate court held that a forfeiture to an appellate challenge to an attorney fee reimbursement order cannot "properly be predicated on the failure of a trial attorney to challenge an order concerning *his own fees*," given the

11

"patent conflict of interest."  (*Id.* at p. 1215, original italics.)  The People urge us to reject *Viray*, arguing its reasoning "rings hollow."

The issue of whether the forfeiture rule applies to an order for reimbursement of attorney fees is unsettled and is currently before our Supreme Court.  (See *People v. Aguilar* (2013) 219 Cal.App.4th 1094, review granted Nov. 26, 2013, S213571 [failure to object to attorney fee order forfeits claim].)  The $5,000 order is not de minimis, and there is a statutory presumption that defendant cannot afford to pay it.  In these circumstances, we see no tactical reason not to challenge it.  Because the issue is unsettled, and to avoid the inevitable claim of ineffective assistance of counsel if we find forfeiture, we reach the merits of defendant's claim.

For the reasons we set forth *ante* when addressing the cost of the probation report, there is insufficient evidence to support the order for reimbursement of attorney fees.  We will strike the order.

## DISPOSITION

The orders for payment of probation costs and reimbursement of attorney fees are stricken.  In all other respects, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment striking the orders and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

                                                                         DUARTE_____, J.

We concur:

_____NICHOLSON_____, Acting P. J.

_____MURRAY_____, J.