Filed 4/12/21  P. v. Aguirre CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B296222 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA118509) |
| v. | |
| NORBERT AGUIRRE, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Modified and affirmed with directions.

Robert A. Werth, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Norbert Aguirre was accused of slashing a man's face.  At trial, Aguirre claimed he "is not the one that did it."  The jury disagreed and convicted him of assault by means of force likely to produce great bodily injury and assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1), (4).)[1]  He was sentenced to 16 years in prison.

The trial court did not abuse its discretion by denying Aguirre's motion to dismiss a prior strike conviction or by denying the jury's request for a readback of the defense closing argument.  However, we vacate Aguirre's conviction for assault by means of force likely to cause great bodily injury, which duplicates his conviction for assault with a deadly weapon:  Both crimes are based on the same act.  (§ 954; *People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).)  As modified, we affirm with directions.

## FACTS

On April 23, 2018, Alfredo Huazano was drinking beer at a bus stop by a Valero station in La Puente.  He uses a wheelchair.  Aguirre showed up, drinking beer, and they struck up a conversation.  Huazano knew Aguirre as someone from the neighborhood.  They went to Liquor Hut to buy more beer.  Huazano felt comfortable with Aguirre and paid for the beer.

They encountered an acquaintance of Aguirre's at Liquor Hut.  At first, they talked and drank convivially.  Then Aguirre and the other man began arguing and shoving.  Huazano left when the fighting started.  As he rolled down the sidewalk, he heard Aguirre screaming behind him.  He looked back and saw

---

[1] Undesignated statutory references are to the Penal Code.

Aguirre approaching, holding a knife.  Earlier, Huazano noticed that Aguirre wore a knife at his waist.

Huazano had no idea why Aguirre was pursuing him.  He had not been disrespectful or given Aguirre cause to be angry.  Aguirre caught up and slashed Huazano's face from his temple to his nose.  Huazano is positive Aguirre was his assailant.  Huazano's face had to be sutured at a hospital.

The jury saw security camera footage from Liquor Hut.  Huazano identified himself with Aguirre and a third individual.  Cameras at the Valero station showed Huazano rolling into view, right after the knife attack.  Bystanders provided paper towels to staunch the bleeding and called paramedics.

On cross-examination, Huazano conceded that he was initially uncooperative with police and identified his assailant only as a "male Hispanic."  He explained that he was upset, in pain, and in no mood to discuss the attack.  Huazano testified that he drank two 25-ounce beers that afternoon but told officers he had four beers.  He also smoked marijuana with Aguirre.

Detective Stevan Suarez interviewed Aguirre, who said he hangs out at the bus stop by the Valero station in La Puente, drinking beer.  Aguirre denied knowing Huazano or arguing or getting into a fight with anyone or having any knowledge of a knifing incident.

When Suarez first spoke to Huazano, he was vague about his attacker.  He described the assailant as a male with a dark complexion between 35 and 45 years of age with tattoos on his neck who hangs out by the Valero station.  Suarez showed Huazano a photographic lineup.  Without hesitation, he pointed to Aguirre as the person who slashed him.  Aguirre is the only

person in the six-pack of photos known to hang out by the Valero station.

Huazano did not tell Suarez he saw a knife on Aguirre's waistband or about an argument between Aguirre and a third party. Security camera video from Liquor Hut showed Huazano outside the building, with two other individuals.

Rosa N. was working at Liquor Hut on the day of the attack. In video from the store she recognized herself behind the counter and the person in the wheelchair but denied knowing a person with a backpack who was there at the time. Rosa N. was a recalcitrant witness. She recalled speaking to Suarez but denied giving him the video footage or identifying photos of persons in the store. Later, she agreed that Suarez made a copy of the video. In court, she said she did not recognize Aguirre, seated at the defense table.

Suarez testified that he interviewed Rosa N. two weeks after the attack. She recognized Aguirre's photograph and said he accompanied the man using a wheelchair. Suarez said it is common for witnesses in La Puente to be unwilling to testify, due to concerns about their safety living and working in the neighborhood.

## PROCEDURAL HISTORY

Aguirre was charged with assault by means of force likely to produce great bodily injury (ABF). (§ 245, subd. (a)(4).) Over objection, the court allowed the People to add a count of assault with a deadly weapon (ADW). (§ 245, subd. (a)(1).) The court reasoned, "[T]his is a single act that may have resulted in two different types of crimes. Under the law, the jury can find as to each, but the defendant can only be punished as to one" under section 654.

4

The information alleged that Aguirre committed a serious and violent felony by inflicting great bodily injury. (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8), 667.5, subd (c)(8).) Enhancements include a serious prior felony conviction for robbery and two prison sentences. (§§ 211, 667, 667.5.)

The jury convicted Aguirre of ABF and ADW and found he inflicted great bodily injury. He admitted his prior strike convictions and prior prison terms.

The court denied Aguirre's request to dismiss his prior strike enhancement. Citing the disabled victim's inability to defend himself, the court sentenced Aguirre to the high term of four years for ADW, doubled, plus five years for his robbery conviction, plus three years for inflicting great bodily injury. (§§ 245, subd. (a)(1), 667, subds. (a)(1), (e)(1), 12022.7.) It struck a prior prison term enhancement. The court imposed a four-year term for ABF but stayed the sentence. (§§ 245, subd. (a)(4), 654.) The total prison term is 16 years.

## DISCUSSION

### 1. Assault Convictions

Aguirre argues that he cannot stand convicted of ABF and ADW because both arose from a single act: slashing the victim. "The issue of whether multiple convictions are proper is . . . reviewed de novo, as it turns on the interpretation of section 954." (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.) We agree that one of Aguirre's convictions must be vacated.

Section 954 allows the People to join, in one action, *different offenses* connected in their commission, *different statements* of the same offense, and *different offenses* of the same class of crimes. Though section 954 " 'authorizes multiple convictions for different or distinct offenses, [it] does not permit

multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*Vidana, supra,* 1 Cal.5th at pp. 648, 650 [defendant cannot be convicted of larceny and embezzlement for the same conduct, even if the crimes have different elements and are not lesser included offenses].)

Aguirre cannot be convicted more than once for committing a single offense. (*People v. Rouser* (1997) 59 Cal.App.4th 1065, 1073 ["A single crime cannot be fragmented into more than one offense"].) "When a single act relates to but one victim, and violates but one statute, it cannot be transformed into multiple offenses by separately charging violations of different parts of the statute." (*People v. Tenney* (1958) 162 Cal.App.2d 458, 461; *People v. Muhammad* (2007) 157 Cal.App.4th 484, 494.)

As to the crimes charged here, "[t]he offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon." (*In re Mosley* (1970) 1 Cal.3d 913, 918, fn. 5; *People v. McGee* (1993) 15 Cal.App.4th 107, 114.) The Attorney General asserts that ADW and ABF are distinct offenses.[2]

The ADW and ABF offenses were not distinct. Aguirre committed one discrete act using a knife, not a multifacted

_____

[2] Our Supreme Court will consider, in *People v. Aguayo* (2019) 31 Cal.App.5th 758, review granted May 1, 2019, S254554, whether ABF is a lesser included offense of ADW and if so, whether an ABF conviction was based on the same act or course of conduct as a conviction of ADW; the court directed the parties to address in supplemental briefing whether section 245, subdivision (a)(1) and (4) are "merely different statements of the same offense for purposes of section 954? If so, must one of defendant's convictions be vacated?"

attack.[3] This is comparable to *People v. Brunton* (2018) 23 Cal.App.5th 1097 (*Brunton*), holding that when an assault is based on "a defendant's single act of using a noninherently dangerous object in a manner likely to produce great bodily injury, section 245(a)(1) and (4) are merely different statements of the same offense such that the defendant may not be convicted of violating both subparts of the subdivision." (*Id.* at p. 1107.) ABF and ADW are alternative statements of aggravated assault. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1035.)

This case is not comparable to *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844. In *Kopp*, the defendant was convicted of ADW and ABF. Count 1 involved "the use of a knife" and count 2 was "based on punches and kicks to the head." (*Id.* at p. 63.) Here, by contrast, both counts are based on one indivisible act.

In sum, Aguirre cannot be twice convicted of one assault where both convictions are different statements of the same offense. (*Vidana, supra,* 1 Cal.5th at p. 650.) "Because both counts assert only a single offense arising from the same conduct, the jury could properly have convicted [him] of only one count." (*Brunton, supra,* 23 Cal.App.5th at p. 1106.) We vacate Aguirre's conviction in count 1 for ABF. (§ 245, subd. (a)(4).) He remains convicted in count 2 of ADW, which fits his crime of slashing the victim with a knife and which the trial court used as the principal term in sentencing. (§ 245, subd. (a)(1); *People v. Ryan* (2006) 138 Cal.App.4th 360, 371 [reviewing court retains the conviction that more completely covers the defendant's act].)

_____

[3] A knife is not an inherently dangerous object because it has innocent uses. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6.)

## 2. Request For Summation Transcript

During deliberations, the jury requested a transcript of the defense closing argument. The court replied that it "can offer only the readback of witness testimony or stipulations received during trial. This does not include the final arguments of either counsel. As instructed, final arguments are not evidence for the jury to consider." The court later told jurors it could "give both sides an opportunity to re-argue [any] issue that is of concern to the jury" and "I can also certainly offer the readback of existing testimony of any witness." Counsel did not object.

Section 1138 "gives a deliberating jury the right to rehear evidence and instruction on request, but does not extend to argument of counsel." (*People v. Pride* (1992) 3 Cal.4th 195, 266.) The court did not abuse its discretion by deciding that the jury's attention would be diverted "from proper consideration of the evidence" by repeating counsel's argument. (*Id.* at pp. 266–267.)

Aguirre's defense was simple. He claimed "this was a mistaken identity case" or the victim was biased or not credible. His defense "was not of such complexity that its repetition was necessary in order for [him] to receive the full benefit of the adversarial process." (*People v. Sims* (1993) 5 Cal.4th 405, 453.)

If the court misunderstood its "inherent authority" to read back argument, the error was harmless. (*People v. Sims, supra,* 5 Cal.4th at p. 453.) The evidence of guilt was compelling. Huazano knew Aguirre from the neighborhood; he was not a stranger. They chatted at the bus stop, traveled to Liquor Hut (where Huazano treated Aguirre to a beer) and socialized outside the store. In corroboration, Rosa N. told Suarez that Aguirre was with Huazano at Liquor Hut. Huazano later saw Aguirre pursuing him with a knife. All told, mistaken identity was a

defense unlikely to succeed. "[I]t is not reasonably probable that, had the trial court read back the summation, the jury would have reached a different verdict." (*Ibid*; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### 3. Motion To Strike Prior Convictions

By written motion, Aguirre asked the court to strike his 1993 conviction for robbery and 2011 conviction for carrying a concealed dirk or dagger. (§§ 1385, 211, former § 12020, subd. (a)(4).) He argued that the robbery conviction is 26 years old, though he did not subsequently remain free of custody owing to numerous drug convictions. The People countered that Aguirre has led a life of crime, suffering 37 convictions with four felonies. He was on probation when he assaulted Huazano.

The court reviewed Aguirre's "thoroughly itemized" criminal history and noted that he has engaged in assaults since he was a minor. The probation report shows he committed ADW at ages 14 and 15. While on parole for robbery, he was convicted of misdemeanor battery (1996 and 1997) and ADW (1997). After being discharged from parole in mid-1998, he was convicted of domestic violence in 1999, 2009, 2014, and 2016. His rap sheet shows four decades of unceasing arrests and convictions.

After considering Aguirre's current offense and prospects for living a crime-free life, the court found he has made no effort to rehabilitate himself and engages in violent conduct. In the present case, Aguirre "attacked an individual confined to a wheelchair and viciously stabbed and injured that individual who was unable to defend himself." It concluded that Aguirre "falls well within the spirit of Three Strikes" and denied his motion.

The court had discretion to deny Aguirre's motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

Striking a prior felony conviction is a departure from the sentencing norm. (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) The court considers whether the defendant falls outside the Three Strikes Law given his present felony, past convictions, and "the particulars of his background, character and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The court considered Aguirre's criminal history and assault on a vulnerable victim. His unrelenting 40-year history of recidivism resulted in frequent incarceration. There is no indication he feels remorse for his conduct or the burden he has imposed on society. Aguirre is a habitual criminal to whom the Three Strikes Law applies. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320–321 [defendant's "continuous crime spree . . . has substantially spanned his entire adult life"].) The denial of his motion was not an irrational or arbitrary abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

## DISPOSITION

The judgment is modified to vacate Norbert Aguirre's conviction on count 1, assault by means likely to produce great bodily injury. Aguirre's prison sentence is unchanged. The trial court is directed to correct the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

11