[No. C014426. Third Dist. Dec. 1, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL FENTON, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of Discussion.

---

COUNSEL

Frank Romano for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Edmund D. McMurray and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

NICHOLSON, J.—Defendant smuggled drugs into a jail by placing them between his toes. One drug was a controlled substance for which he held a physician's prescription. The other drug was not a controlled substance. Convicted by jury of violating Penal Code sections 4573 (smuggling a controlled substance into a jail) and 4573.5 (smuggling a drug other than a controlled substance into a jail) and granted probation, defendant appeals. We conclude Penal Code section 4573 does not proscribe smuggling a

controlled substance into a jail as long as the smuggler/inmate has a physician's prescription. Accordingly, we reverse the conviction as to the violation of Penal Code section 4573, but otherwise affirm the judgment.[1]

## FACTS

Following a conviction for possession of cocaine for sale, defendant was granted probation, including a county jail term with work furlough. On March 11, 1992, Placer County Sheriff's Deputy Richard Padilla was on duty at a minimum security facility in Auburn. As defendant checked in at the facility that day, Deputy Padilla searched him. During the search, the deputy discovered three pills hidden between the toes of defendant's right foot. Defendant said the pills were for his back pain and a sleep disorder.

The items discovered consisted of two capsules and a tablet. The capsules contained a drug, temazepam, which is not a controlled substance. Temazepam aids sleep. (Physicians' Desk Reference (1993) p. 2118.) The tablet contained hydrocodone, an opiate and controlled substance, which relieves pain. (*Id.* at p. 1214.)

Prior approval is required from the medical staff before inmates may bring in their own medications. According to Deputy Padilla, defendant told him the physician's assistant denied his request to bring the substances into the facility because they were "too strong."

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

At oral argument, after considerable discussion of the issue, we requested supplemental briefing on whether the language in section 4573, "any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code," renders section 4573 inapplicable where, as here, defendant has a physician's prescription for the controlled substance. The only relevant prohibition in division 10 is contained in Health and Safety Code section 11350, subdivision (a), which proscribes possession of a controlled substance "unless upon the written prescription of a physician."

---

[1] Hereafter, unspecified code references are to the Penal Code.
*See footnote, *ante*, page 965.

Relying primarily on his view of the purpose underlying section 4573, the Attorney General contends the statute must be interpreted to prohibit individuals from bringing any controlled substance into penal institutions, whether or not they have a doctor's prescription for it.[2] Defendant responds that the Legislature intended not to impose punishment on individuals for possession of controlled substances with a prescription, whether or not the individuals were confined in penal institutions.

Ordinarily penal statutes are construed most favorably to the defendant. (*People* v. *Boyd* (1979) 24 Cal.3d 285, 295 [155 Cal.Rptr. 367, 594 P.2d 484].) Penal provisions are "to be construed according to the fair import of their terms, with a view to effect [the Penal Code's] objects and to promote justice." (§ 4.)

"It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) It is beyond the power of the judicial branch to create crimes or amend criminal statutes. The Penal Code specifically states "[n]o act or omission . . . is criminal or punishable, except as prescribed or authorized by this code, or by some of the statutes . . . ." (§ 6.)

Division 10 of the Health and Safety Code comprises the California Uniform Controlled Substances Act. (Health & Saf. Code, § 11000 et seq.) Chapter 2 contains schedules listing controlled substances subject to the provisions of division 10, and chapter 6 describes the offenses associated with controlled substances.

Defendant's argument rests on the premise that section 4573, by utilizing the term "prohibited by" when referring to division 10 of the Health and Safety Code, does more than simply incorporate a list of controlled substances and, consequently, does not prohibit bringing prescribed controlled substances into penal institutions. The Attorney General disagrees.

In interpreting section 4573, we apply familiar principles of statutory construction. "In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' . . . 'An equally basic rule of statutory construc-

---

[2]Defendant's conviction for violating section 4573.5, which makes no reference to Division 10 of the Health and Safety Code, is not in issue.

tion is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' . . . Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. . . . 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856], citations omitted.)

Thus, where the language of a statute is clear, ". . . its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) An exception to that principle is a situation in which to follow a statute's plain meaning " ' "would result in absurd consequences which the Legislature did not intend." ' " (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; see also *People* v. *Boyd, supra,* 24 Cal.3d at p. 294.)

Contrary to the Attorney General's assertion, the reference to division 10 must include the prescription exception because section 4573 imports the prohibition against possession of controlled substances not the list of controlled substances. Thus, the "plain meaning" of the statute is that one may bring controlled substances into a penal institution if an exception contained in division 10 applies. Here, one does. Health and Safety Code section 11350 does not prohibit possession of a controlled substance with a prescription.

The Attorney General concedes this interpretation has "literal grammatical merit." The issue, as the Attorney General argues, is whether such an interpretation leads to "absurd results," or would frustrate the "manifest purposes" of the statute. (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

The Attorney General claims giving effect to the plain meaning of section 4573 leads to an absurd result because (1) it would permit introduction of controlled substances into a penal institution, and (2) it would render section 4573 a nullity, simply restating the effect of Health and Safety Code section 11350.

The Attorney General's first reason fails to support a finding of absurd results. Section 4573 permits controlled substances to be in penal institutions under proper circumstances. It prohibits introducing the controlled substances into the penal institution "[e]xcept when otherwise authorized by

law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give the authorization . . ." The deputy who searched defendant testified inmates are allowed to bring their prescriptions into the jail if approved by the medical staff.

The Director of Corrections has the authority to prescribe and amend rules for the administration of prisons. (§ 5058.) In addition, the counties have the authority to make reasonable rules and regulations for the administration of county jails. (See § 4019, subd. (c).) The failure of section 4573 to proscribe smuggling prescribed controlled substances into a penal institution does not prevent penal institutions from imposing specific rules on whether controlled substances for which the inmate has a physician's prescription can be introduced into the institution. In other words, smuggling a prescribed controlled substance into a penal institution is not deemed desirable or permissible just because the Legislature, whether or not inadvertently, has not made it a felony.

The Attorney General argues construing section 4573 to give effect to its plain meaning would render it a nullity or superfluity. Health and Safety Code section 11350 prohibits the possession of a controlled substance without a prescription. Section 4573 adopts the Health and Safety Code prohibition of possessing controlled substances and creates another crime of smuggling controlled substances into a penal institution.

The Attorney General contends section 4573, as written, has no effect beyond Health and Safety Code section 11350 because formerly the two statutes provided for the same terms of imprisonment. Therefore, he suggests, the Legislature must have meant to exclude the prescription exception when it imported the Health and Safety Code prohibition. This, however, is an arbitrary way to amend one of the statutes to make the effect of the statutes different. If our job were to amend statutes to make them different, we could just as easily amend section 4573 to provide for a greater punishment. Indeed, in 1990, the Legislature, which has the explicit constitutional duty to legislate, did just that, increasing the punishment for violation of section 4573 to the present triad of two, three, or four years in state prison. (Stats. 1990, ch. 1580, § 2.) Application of the plain meaning of section 4573 does not lead to an absurd result.

The Attorney General also makes several sweeping pronouncements concerning the Legislature's intent, declaring it intended to import the list of controlled substances from the Health and Safety Code, not the prohibition which includes the prescription exception. However, since application of

section 4573, as written, does not lead to an absurd result, we do not look beyond the plain meaning to divine some unexpressed intent.[3] (See *Younger v. Superior Court, supra*, 21 Cal.3d at p. 113.) "[I]t still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words." (*Ex parte Goodrich* (1911) 160 Cal. 410, 416-417 [117 P. 451].)

Defendant did not violate section 4573 because he had a physician's prescription for the hydrocodone. He may have violated the rules and regulations of the jail and, if he did, will have to suffer the consequences, but that is not at issue in this prosecution. The conviction for violation of section 4573 must be reversed.[4]

### DISPOSITION

The conviction for violation of section 4573 is reversed. In all other respects, the judgment (order granting probation) is affirmed.

Blease, Acting P. J., and Sims, J., concurred.

---

[3]If the Legislature intended to import the list rather than the prohibition, it could have amended section 4573 to prohibit smuggling "any controlled substance, ~~the possession of which is prohibited by~~ *defined by* Division 10 . . . of the Health and Safety Code . . . ."

[4]Given this conclusion, we need not consider defendant's contention the trial court erred in denying his motion for a new trial because the jury was not instructed concerning the prescription exception. We note there is no such exception associated with section 4573.5.