[No. C022519. Third Dist. Dec. 8, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM EDWARD ROUSER, Defendant and Appellant.

**COUNSEL**

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi, Thomas H. Beattie and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

PUGLIA, P. J.—In this appeal we hold that contemporaneous possession in a state prison of two or more discrete controlled substances (here methamphetamines and heroin) at the same location constitutes but one offense under Penal Code section 4573.6.

A jury convicted defendant, a state prison inmate, of three counts of possession of a controlled substance by a prisoner in violation of Penal Code section 4573.6 (count 2 [possession of cocaine base and marijuana on March 6, 1993], count 3 [possession of methamphetamine on June 26, 1995] and count 4 [possession of heroin on June 26, 1995]; further statutory references to sections of an undesignated code are to the Penal Code). The jury also found true allegations defendant had incurred nine felony convictions within the meaning of the three strikes law (§§ 667, subd. (d), 1170.12, subd. (c)) and had served two prison terms (§ 667.5, subd. (b)). Defendant was acquitted of one charge of violation of section 4573.6 (count 1 [possession of cocaine base on August 14, 1994]).

On count 2, which was committed before the enactment of the three strikes law (Stats. 1994, ch. 12, eff. Mar. 7, 1994), the court sentenced defendant to a three-year term, consecutive to his current prison term. The court also imposed two consecutive indeterminate terms of twenty-five years to life on counts 3 and 4 and one year each for the two prior prison terms.

Counts 3 and 4 charge defendant respectively with possession of methamphetamine and heroin on the same day, June 26, 1995. Defendant kept these substances in the same location—his cell. Defendant contends that contemporaneous possession of more than one controlled substance in the same place constitutes but one offense under section 4573.6.

Section 4573.6 provides in relevant part: "Any person who knowingly has in his or her possession in any state prison . . . any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or

consuming controlled substances, without being authorized to so possess the same . . . , is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years."

Defendant argues the Legislature intended to make but one crime of contemporaneous possession in prison of multiple controlled substances. This intent is manifested, defendant argues, by the language "any controlled substances." Defendant contrasts the use of the plural in section 4573.6 to the use of the singular in the Health and Safety Code sections which prohibit the possession respectively of heroin and methamphetamine, i.e., Health and Safety Code sections 11350, subdivisions (a) and (b) ("any controlled substance") and 11377, subdivision (a) ("any controlled substance"). (See *People* v. *Howell* (1984) 151 Cal.App.3d 824, 828-829 [199 Cal.Rptr. 110].)

Relying on *People* v. *Fusaro* (1971) 18 Cal.App.3d 877 [96 Cal.Rptr. 368] and *In re Adams* (1975) 14 Cal.3d 629 [122 Cal.Rptr. 73, 536 P.2d 473], the Attorney General responds that when different kinds of controlled substances are possessed at the same time and place, there are as many crimes committed under section 4573.6 as there are discrete substances possessed.

Numerous cases have upheld separate convictions for contemporaneous possession of more than one controlled substance. (*People* v. *Aguirre* (1970) 10 Cal.App.3d 884, 893 [89 Cal.Rptr. 384] [defendant may be convicted under former Health and Safety Code section 11911 (now section 11378) both for possession of amphetamine sulfate for sale and possession of barbituric acid for sale since these drugs are defined as separate drugs under former Health and Safety Code section 11901 (now section 11032)]; *People* v. *Schroeder* (1968) 264 Cal.App.2d 217, 228 [70 Cal.Rptr. 491] [defendant may be convicted under former Health and Safety Code section 11500 (now section 11350) both for possession of morphine and possession of opium]; *People* v. *Seaberry* (1968) 260 Cal.App.2d 507, 510 [67 Cal.Rptr. 182] [defendant may be convicted under former Health and Safety Code section 11911 (now section 11378) both for possession of seconal for sale and possession of benzedrine for sale]; *People* v. *Lockwood* (1967) 253 Cal.App.2d 75, 82 [61 Cal.Rptr. 131] [defendant may be convicted under former Health and Safety Code section 11500 (now section 11350) both for possession of codeine and possession of opium]; *People* v. *Lopez* (1959) 169 Cal.App.2d 344, 351 [337 P.2d 570] [defendant may be separately convicted under Health and Safety Code section 11500 (now section 11350) for possession of heroin, of marijuana and of amidone].)

In *Schroeder*, the defendant was charged in separate counts with contemporaneous possession of opium powder (count I) and opium (count II). The

court held these two charges constituted but one offense because the narcotics were "of one kind," i.e., they "both fall into the category of 'Opium and its derivatives and compounds . . . .' " (264 Cal.App.2d at p. 228.) For the same reason, the court held possession of the narcotics separately charged in counts III through IX constituted a single offense since those narcotics were all of one kind: "Those narcotics which are the subjects of counts III through IX all fall into the category of 'Phenanthrene opium alkaloids, their salts, derivatives and compounds . . . morphine alkaloid, morphine salts, morphine compounds and preparations.' [Citation.]" (*Ibid.*) Nevertheless, *Schroeder* concluded discrete legislative classifications of narcotics support separate charges and convictions.

The cases discussing multiple convictions for possession of discrete controlled substances were decided under a different statute than the one before us.

■ "Well-settled principles of statutory construction require that we interpret the language of [Penal Code section 4573.6] in a manner consistent with the legislative intent by looking first to the words used in the statute, giving those words their usual and ordinary meaning, construing them 'in the context of the statutory scheme in which they appear, giving significance to every word, phrase, sentence and part of the act in which they appear and avoiding any interpretation which makes some words surplusage. [Citation.]' [Citations.] ' "[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." [Citation.] "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." [Citation.] . . .' [Citation.] [¶] When statutory language is susceptible of more than one meaning, we must accept the meaning as intended by the framers of the legislation, if we can ascertain that intention. [Citation.] We must examine the legislative history and statutory context of the act under scrutiny to discern legislative intent. [Citation.]" (*People* v. *Thomas* (1996) 42 Cal.App.4th 798, 801 [49 Cal.Rptr.2d 856]; see also *People* v. *Fuhrman* (1997) 16 Cal.4th 930, 937 [67 Cal.Rptr.2d 1, 941 P.2d 1189].)

■ " '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted.' " (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186], quoting *In re Tartar* (1959) 52 Cal.2d 250, 256 [339 P.2d 553].)

With respect to the singular number ("any controlled substance") in Health and Safety Code sections 11350 and 11377 and the plural number

("any controlled substances") in section 4573.6, the Attorney General argues there is no significant difference because section 7 provides, in relevant part, that ". . . the singular number includes the plural, and the plural the singular." Both parties focus on the language "any controlled substances" in section 4573.6 and completely ignore the succeeding clause which is literally in the singular: "any device, contrivance, instrument or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances." However, "[a]s used in criminal statutes, the word 'any' has long been construed as ambiguously indicating the singular or the plural." (*People v. Kirk* (1989) 211 Cal.App.3d 58, 62 [259 Cal.Rptr. 44].)

In *Kirk*, the issue was whether the defendant could be convicted of two violations of former section 12020 for his possession of two sawed-off shotguns found at the same time and place. Former section 12020 declared that "Any person . . . who possesses . . . any instrument or weapon of the kind commonly known as a . . . sawed-off shotgun . . . is guilty of a felony, . . ." (211 Cal.App.3d at pp. 60-61.) In finding former section 12020 ambiguous, the court stated, "By its use of the term 'any' rather than 'a,' the statute does not necessarily define the unit of possession in singular terms. [Citation.] The statutory ambiguity is compounded by section 7 which provides in pertinent part that 'the singular number includes the plural, and the plural the singular; . . .' 'The rule of construction enunciated in section 7 is no mere rubric—it is the law.' [Citation.] Read together, former section 12020, subdivision (a) and section 7 fail to provide any warning that separate convictions will result for each weapon simultaneously possessed." (211 Cal.App.3d at p. 65.)

"Controlled substances" in section 4573.6 is further modified by the language, "the possession of which is prohibited by Division 10 (commencing with section 11000) of the Health and Safety Code." (§ 4573.6.)

"Division 10 of the Health and Safety Code comprises the California Uniform Controlled Substances Act. (Health & Saf. Code, § 11000 et seq.) Chapter 2 contains schedules listing controlled substances subject to the provisions of division 10, and chapter 6 describes the offenses associated with controlled substances." (*People v. Fenton* (1993) 20 Cal.App.4th 965, 968 [25 Cal.Rptr.2d 52].) In *Fenton*, the issue was whether section 4573 proscribes smuggling into jail a controlled substance for which the smuggler has a physician's prescription. (20 Cal.App.4th at pp. 966-967.) Looking no further than the plain meaning of the statute, the *Fenton* court concluded defendant did not violate section 4573 because he had a prescription. (20 Cal.App.4th at pp. 970-971.) The court rejected the Attorney General's argument that in referring to division 10 the Legislature "intended to import

the list of controlled substances from the Health and Safety Code [chapter 2 of division 10], not the prohibition [against possession of controlled substances] which includes the prescription exception [chapter 6 of division 10, Health and Safety Code section 11350, subd. (a)]." (20 Cal.App.4th at pp. 967, 970-971.)

Unlike chapter 6 of division 10, section 4573.6 appears to be aimed at problems of prison administration. In *People* v. *Clark* (1966) 241 Cal.App.2d 775 [51 Cal.Rptr. 7] the court rejected the defendant's claim that section 4573.6 impliedly repealed former Health and Safety Code section 11500 (now section 11350): "Section 4573.6 is found in chapter 3 of title 5 of part 3 of the Penal Code, chapter 3 being titled 'Unauthorized Communications with Prisons and Prisoners.' Section 4570, appearing under the same chapter, forbids the bringing in or taking out of reading matter without permission of the warden or other officer in charge of the custodial institution; with reference to this statute, our Supreme Court has declared that 'Reasonable censorship of the printed matter which may be possessed by an inmate is necessary in prison administration. . . .' [Citation.] *A fortiori* section 4573.6 serves a similar purpose—and to a much greater degree." (241 Cal.App.2d at p. 779.)[1] "[Health and Safety Code] Section 11500 [now section 11350], on the other hand, is designed to protect the health and safety of all persons within its borders [*sic*] [including the persons (inmates and visitors) mentioned in section 4573.6] by regulating the traffic in narcotic drugs." (241 Cal.App.2d at p. 780; see also *People* v. *Aston* (1985) 39 Cal.3d 481, 490 [216 Cal.Rptr. 771, 703 P.2d 111].)[2]

Section 4573.6 also appears to be broader in scope than Health and Safety Code sections 11350 and 11377.[3] While each of the latter sections applies to possession of specified controlled substances, section 4573.6 covers "any

[1]At the time, section 4573.6 provided in relevant part: "Any person having in his possession in any state prison, . . . any narcotics, or drugs in any manner, shape, form, dispenser or container, or alcoholic beverage, without being authorized to so possess . . . , is guilty of a felony." (Stats. 1949, ch. 833, § 3, p. 1583.)

[2]Former Health and Safety Code section 11500 provided in relevant part: "Except as otherwise provided in this division, every person who possesses any narcotic other than marijuana except upon the written prescription of a physician, . . . shall be punished by imprisonment . . . ." (Stats. 1961, ch. 274, § 1, p. 1301.)

[3]Health and Safety Code section 11350 provides in relevant part as follows: "(a) Except as otherwise provided in this division, every person who possesses (1) any controlled substance specified in subdivision (b) or (c), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b), (c), or (g) of Section 11055, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription . . . ."

Health and Safety Code section 11377 provides in relevant part as follows: "(a) Except as otherwise provided in subdivision (b) or in Article 7 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who possesses

controlled substances, . . . ." It also covers "any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances. . . ." This language is similar to but broader than that in section 11364 of the Health and Safety Code which provides: "It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (2) of subdivision (d) of Section 11055, or (2) a controlled substance which is a narcotic drug classified in Schedule III, IV, or V."

Carrying the Attorney General's argument to its logical extension, a prison inmate could be convicted under section 4573.6 of nine counts of unlawful possession for simultaneously having in his cell a smoking pipe, a hypodermic kit, marijuana cigarettes, methamphetamine, heroin, cocaine, a mirror, a razor blade, and LSD tablets. Based on the language of section 4573.6, it is unreasonable to conclude the Legislature intended such a result.

In *People* v. *Harris* (1977) 71 Cal.App.3d 959 [139 Cal.Rptr. 778], at pages 968 to 971, the court considered whether the defendants could be convicted of nine counts of possession under section 537e, which provided in relevant part: "(a) Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his possession a radio, piano, phonograph, sewing machine, washing machine, typewriter, adding machine, comptometer, bicycle, a safe or vacuum cleaner, dictaphone, watch, watch movement, watch case, or any mechanical or electrical device, appliance, contrivance, material, piece of apparatus or equipment, from which the manufacturer's name plate, serial number or any other distinguishing number of identification mark has been removed, defaced, covered, altered or destroyed, is guilty of a misdemeanor." (Stats. 1974, ch. 269, § 1, p. 495; see also Stats. 1990, ch. 408, § 1, p. 1773.)[4]

The defendants' home had been searched pursuant to a warrant and the following items were found: "Coronado television (count two), Zenith portable color television (count three), Electrophonic modular stereo set (count

---

any controlled substance which is (1) classified in Schedule III, IV, or V, and which is not a narcotic drug, except subdivision (g) of Section 11056, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), and (20) of subdivision (d), (3) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (4) specified in subdivision (d), (e), or (f) of Section 11055, unless upon the prescription . . . ."

[4]Section 537e now provides: "(a) Any person who knowingly buys, sells, receives, disposes of, conceals, or has in his or her possession any personal property from which the manufacturer's serial number or any other distinguishing number or identification mark has been removed, defaced, covered, altered, or destroyed, is guilty of a public offense, . . ." " 'Personal property' includes, but is not limited to," certain specified items.

four), two wood speakers (count five), two wood speakers (count six), Wheel tape deck (count seven), portable black and white television (count eight), JVC black and white television (count nine), digital clock radio (count ten)." (*People* v. *Harris, supra,* 71 Cal.App.3d at p. 962.)

"Properly drawing the analogy urged by [the Attorney General] would require the court to hold that a defendant can be convicted only of as many offenses as there are specific kinds of property specified in Penal Code section 537e, that is, 'a radio, piano, phonograph, . . .' A defendant could not, then, be convicted separately of possessing two radios or two sewing machines or, for that matter, nine appliances." (*People* v. *Harris, supra,* 71 Cal.App.3d at p. 970.) The *Harris* court concluded that an interpretation of section 537e permitting two convictions for possession of a radio and a piano but only one for possession of two radios would be "nonsensical." (71 Cal.App.3d at p. 970.)

Concluding that ". . . it would be unreasonable to fragment the simultaneous possession of the various articles described in Penal Code section 537e into separate acts of possession by category of the items enumerated," the *Harris* court held that defendant could be convicted of only one count. (71 Cal.App.3d at p. 971.)

A single crime cannot be fragmented into more than one offense. (*People* v. *Schroeder, supra,* 264 Cal.App.2d at p. 228, citing *People* v. *Stephens* (1889) 79 Cal. 428, 430 [21 P. 856].) "The general jurisprudential considerations are the same as those disfavoring imposition of multiple punishments upon crimes arising out of a single transaction (Pen. Code, § 654), but there is a technical difference between them. The issue here is 'identity of [the] offenses as distinguished from the identity of [the] transactions from which they arise.' [Citation.]" (*People* v. *Schroeder, supra,* 264 Cal.App.2d at p. 228, quoting *People* v. *Venable* (1938) 25 Cal.App.2d 73, 74 [76 P.2d 523].)

■ Defendant is entitled to the benefit of any ambiguity in section 4573.6. (*People* v. *Collins* (1983) 143 Cal.App.3d 742, 745-746 [192 Cal.Rptr. 101].) A statute intended at least in part to address problems of prison administration prohibits possession of "any controlled substances" in prison. The quoted phrase describes a single offense irrespective of how many controlled substances are possessed, as here, at the same time and in the same place.

If the Legislature is so inclined, it can, of course, amend the statute to make a separate crime of the possession in prison at the same time and place of each of several discrete controlled substances.

The conviction on count four (§ 4573.6; possession of heroin) is reversed and that count is ordered dismissed. The trial court is directed to amend the abstract of judgment accordingly, the amended abstract also to reflect the imposition of a one-year term for each of the two prior prison term enhancements (§ 667.5, subd. (b)).[5] The trial court is ordered to forward a certified copy of the amended abstract to the Department of Corrections. As modified, the judgment is affirmed.[6]

Sims, J., and Callahan, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 1, 1998. Baxter, J., was of the opinion that the petition should be granted.

---

[5]The abstract incorrectly recites the imposition of a three-year term for one of the prior prison term enhancements.

[6]Defendant's request for remand for resentencing under *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] is denied because the trial court did not affirmatively indicate on the record that it misunderstood the scope of its discretion to strike a prior conviction under section 1385. (*People* v. *Fuhrman, supra,* 16 Cal.4th 945.) Accordingly, we leave the defendant to his collateral remedy. (*Fuhrman, supra,* 16 Cal.4th at pp. 945-947).