Filed 6/11/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>GOLDY RAYBON,<br><br>        Defendant and Appellant.<br><br>[And four other cases.*] | C084853<br><br>(Super. Ct. No. 09F08248) |

        APPEALS from judgments of the Superior Court of Sacramento County, Curtis M. Fiorini, Judge.  Reversed with directions.

        Paulino G. Durán, Public Defender, David Lynch and Leonard K. Tauman, Assistant Public Defenders, for Defendants and Appellants.

        Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Nicholas M. Fogg and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

------

* *People v. Cooper* (No. C084911 [Super. Ct. Sacramento County, No. 13F03230]); *People v. Davis* (No. C084960 [Super. Ct. Sacramento County, No. 08F07402]); *People v. Haynes* (No. C084964 [Super. Ct. Sacramento County, No.12F00411]); *People v. Potter* (No. C085101 [Super. Ct. Sacramento County, No. 06F11185]).

According to the plain language of Health and Safety Code section 11362.1, enacted as part of Proposition 64, possession of less than an ounce of cannabis in prison is no longer a felony. Smoking or ingesting cannabis in prison remains a felony and prison regulations forbid possession. The Attorney General uses arcane rules of statutory construction, twists the meaning of the words of the statute, urges us to disapprove of cases directly on point, and makes a host of policy arguments why we should not apply the plain language of the statute. The question of law we review de novo is whether the plain language of the statute leads to an absurd result. We conclude it does not. A result is not absurd because the outcome may be unwise. Cognizant of the humble role of the courts in construing statutes, not rewriting them to subscribe to our version of sound public policy, we reverse the trial court's denial of defendants' petitions for relief under Health and Safety Code section 11361.8.[1]

## PROCEDURAL HISTORY

Five defendants, all of whom are currently serving a sentence for a conviction of Penal Code section 4573.6, an offense that is no longer a crime pursuant to the Control, Regulate and Tax Adult Use of Marijuana Act (Health & Saf. Code, § 11361.8; Prop. 64, as approved by the voters, Gen. Elec. (Nov. 8, 2016)), filed a petition requesting relief under Proposition 64 and an accompanying motion to dismiss.[2] The superior court denied each of the petitions. The defendants appeal.

---

[1] The defendants are Goldy Raybon (case No. C084853), Anthony L. Cooper (case No. C084911), Dwain Davis (case No. C084960), Scott Wendell Haynes (case No. C084964), and James Potter (case No. C085101).

[2] The Attorney General concedes defendants are "currently serving a sentence for a conviction . . . ." (Health & Saf. Code, § 11361.8, subd. (a).) When a court receives a petition under subdivision (a), it "presume[s]" that the person qualifies for relief unless

2

## THE DISPOSITIVE STATUTES

In 1949 the Legislature enacted several statutes " 'to deter the presence of illicit drugs in custodial institutions' " and thereby " 'ensure the orderly administration and security within such institutions.' " (*People v. Lee* (2006) 136 Cal.App.4th 522, 536; Pen. Code, §§ 4573, 4573.5, 4573.6, 4573.8, & 4573.9; see also *People v. Gutierrez* (1997) 52 Cal.App.4th 380, 386 (*Gutierrez*).) Although the statutes must be construed together, each targets different substances or different people using, selling, possessing, or smuggling the substances. (*Gutierrez*, at p. 385.) At the center of this appeal is Penal Code section 4573.6 because each of the defendants was convicted of possession of cannabis in violation of this section. Section 4573.6 provides in relevant part: "Any person who knowingly has in his or her possession in any state prison . . . any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, . . . without being authorized to so possess the same by the rules of the Department of Corrections, rules of the prison . . . , or by the specific authorization of the warden . . . is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years." (Pen. Code, § 4573.6, subd. (a).)

The pivotal language, from defendants' perspective, is "the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code." The electorate's attitude toward cannabis has evolved in the approximately 70 years since the Legislature enacted Penal Code section 4573.6. Indeed, by 2016 California voters decided that the possession of less than one ounce of cannabis should no longer be criminalized. (Proposition 64.) Health and Safety Code section 11362.1 states: "(a) Subject to Sections 11362.2, 11362.3, 11362.4, and 11362.45, but notwithstanding

---

the People present "clear and convincing evidence" to the contrary. (Health & Saf. Code, § 11361.8, subd. (b).) The People presented no contrary evidence.

3

any other provision of law, it shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older to:

"(1) Possess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than 28.5 grams of cannabis not in the form of concentrated cannabis;

"(2) Possess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than eight grams of cannabis in the form of concentrated cannabis, including as contained in cannabis products;

"(3) Possess, plant, cultivate, harvest, dry, or process not more than six living cannabis plants and possess the cannabis produced by the plants;

"(4) Smoke or ingest cannabis or cannabis products; and

"(5) Possess, transport, purchase, obtain, use, manufacture, or give away cannabis accessories to persons 21 years of age or older without any compensation whatsoever.

"(b) Paragraph (5) of subdivision (a) is intended to meet the requirements of subsection (f) of Section 863 of Title 21 of the United States Code (21 U.S.C. Sec. 863(f)) by authorizing, under state law, any person in compliance with this section to manufacture, possess, or distribute cannabis accessories.

"(c) Cannabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest." (Health & Saf. Code, § 11362.1.)

Decriminalization under Proposition 64 prevails "notwithstanding any other provision of law . . . ." (Health & Saf. Code, § 11362.1, subd. (a).) The Attorney General acknowledges that the word "notwithstanding" signals that a statute preempts conflicting statutes. (*In re Greg F.* (2012) 55 Cal.4th 393, 406-407.)

4

Defendants, all inmates, claim the plain language of Proposition 64 no longer renders possession of less than an ounce of cannabis a felony, and therefore, their petitions dismissing their convictions must be granted. Health and Safety Code section 11362.45 supports their claim because it expressly lists the laws the electorate determined are not amended, repealed, affected, restricted, or preempted by section 11362.1. Those include laws: prohibiting driving a vehicle while smoking, ingesting, or impaired by cannabis or cannabis products (Health & Saf. Code, § 11362.45, subd. (a)); prohibiting sales or furnishing of cannabis or cannabis products to a person under the age of 21 (Health & Saf. Code, § 11362.45, subd. (b)); prohibiting a person younger than 21 from engaging in any of the conduct otherwise permitted under section 11362.1 (Health & Saf. Code, § 11362.45, subd. (c)); and providing that undertaking any task while impaired from smoking or ingesting cannabis or cannabis products constitutes negligence or professional malpractice (Health & Saf. Code, § 11362.45, subd. (e)).

Defendants direct our attention to the pertinent language of Health and Safety Code section 11362.45, subdivision (d). According to subdivision (d), Health and Safety Code section 11362.1 does not amend, repeal, affect, restrict, or preempt "Laws pertaining to smoking or ingesting cannabis or cannabis products on the grounds of, or within, any facility or institution under the jurisdiction of the Department of Corrections and Rehabilitation or the Division of Juvenile Justice, or on the grounds of, or within, any other facility or institution referenced in Section 4573 of the Penal Code." Conspicuously missing from subdivision (d), defendants argue, is possession. Thus, the electorate specifically addressed the issue of cannabis in prisons and expressly prohibited use, not possession. According to defendants, the plain language of the statutes is clear— possession of less than an ounce of cannabis is no longer a prohibited controlled substance pursuant to division 10 of the Health and Safety Code (hereafter division 10) and, therefore, possession is no longer a felony, even in prison.

# THE DISPOSITIVE CASES

We addressed a nearly identical argument in *People v. Fenton* (1993) 20 Cal.App.4th 965 (*Fenton*). Fenton, while checking into a minimum security facility as a condition of probation and his work furlough program, smuggled in drugs for his back pain and sleep disorder between his toes. (*Id.* at pp. 966-967.) Penal Code section 4573 proscribes smuggling a controlled substance, "the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code" into a jail. But Health and Safety Code section 11350, subdivision (a) proscribes possession of a controlled substance "unless upon the written prescription of a physician." Fenton had a prescription for the pills he smuggled in but he did not have the approval of the jail authorities who concluded the substances were too strong. (*Fenton*, at p. 967.) He was convicted of violating Penal Code sections 4573 and 4573.5. (*Fenton*, at p. 966.)

On appeal, the Attorney General raised many of the arguments he recycles here. He turned first to the purpose of the statute to keep controlled substances out of jails. Penal Code section 4573, in the Attorney General's view, prohibited individuals from bringing any controlled substance into penal institutions, whether or not they had a physician's prescription. We rejected the Attorney General's purpose over plain language analysis. "Contrary to the Attorney General's assertion, the reference to division 10 must include the prescription exception because [Penal Code] section 4573 imports the prohibition against possession of controlled substances not the list of controlled substances. Thus, the 'plain meaning' of the statute is that one may bring controlled substances into a penal institution if an exception contained in division 10 applies. Here, one does. Health and Safety Code section 11350 does not prohibit possession of a controlled substance with a prescription." (*Fenton, supra*, 20 Cal.App.4th at p. 969.)

Unhappy with the plain meaning the Attorney General conceded had " 'literal grammatical merit,' " he argued that our interpretation would lead to absurd results, the

identical prognosis he offers here again. (*Fenton, supra*, 20 Cal.App.4th at p. 969.) In *Fenton*, the Attorney General claimed the plain meaning was absurd because "(1) it would permit introduction of controlled substances into a penal institution, and (2) it would render [Penal Code] section 4573 a nullity, simply restating the effect of Health and Safety Code section 11350." (*Fenton*, at p. 969.) We found both reasons without merit.

The Attorney General overlooked the obvious fact that Penal Code section 4573 actually permits controlled substances in penal institutions under the proper circumstances. And the deputy who had searched Fenton testified that inmates are allowed to bring their prescriptions into the jail as long as they are approved by the medical personnel. (*Fenton, supra*, 20 Cal.App.4th at p. 970.) We distinguished prison rules from criminal laws, noting that the Department of Corrections has the authority to prescribe and amend rules for the administration of the prisons. (*Ibid*.) "The failure of [Penal Code] section 4573 to proscribe smuggling prescribed controlled substances into a penal institution does not prevent penal institutions from imposing specific rules on whether controlled substances for which the inmate has a physician's prescription can be introduced into the institution. In other words, smuggling a prescribed controlled substance into a penal institution is not deemed desirable or permissible just because the Legislature, whether or not inadvertently, has not made it a felony." (*Fenton*, at p. 970.)

We also rejected the Attorney General's argument that construing Penal Code section 4573 to give effect to its plain meaning would render it a nullity. The Attorney General surmised the Legislature must have meant to exclude the prescription exception when it imported the Health and Safety Code prohibition because formerly the two statutes had the same punishment. We wrote: "This, however, is an arbitrary way to amend one of the statutes to make the effect of the statutes different. If our job were to amend statutes to make them different, we could just as easily amend [Penal Code] section 4573 to provide for a greater punishment." (*Fenton, supra*, 20 Cal.App.4th at

7

p. 970.) Thus, we concluded that "[a]pplication of the plain meaning of [Penal Code] section 4573 does not lead to an absurd result." (*Fenton*, at p. 970.) And we reiterated the well-worn principle that " 'it still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not find expression in their words.' [Citation.]" (*Id*. at p. 971.)

In another similar case wherein the defendant brought medical marijuana into a state prison, the appellate court once again rejected the Attorney General's litany of arguments at odds with the plain meaning of the statute. (*People v. Harris* (2006) 145 Cal.App.4th 1456 (*Harris*).) Harris, a qualified patient to use marijuana for chronic pain, possessed wafers and olive oil containing cannabis when he surrendered himself to authorities to serve time for an unrelated crime. (*Id*. at pp. 1459-1460.) He was convicted of a felony in violation of Penal Code section 4573.5. (*Harris*, at p. 1459.) The appeal presented a straightforward issue regarding the plain meaning of Penal Code section 4573.5.

Penal Code section 4573.5 prohibits knowingly bringing into county correctional facilities, among other places, "any drugs, other than controlled substances." Harris entered the county correctional facility with medical marijuana and he had a doctor's authorization giving him the right to possess it. (*Harris, supra*, 145 Cal.App.4th at pp. 1462-1463.) The issue was whether Harris, having brought medical marijuana into a county facility, was subject to Penal Code section 4573.5.

Construing Penal Code sections 4573, 4573.5, 4573.6, and 4573.9 together (*Gutierrez, supra*, 52 Cal.App.4th at p. 386), the court looked to division 10 for a definition of the controlled substances referred to in Penal Code section 4573.5 and concluded that medical marijuana is a controlled substance. (*Harris, supra*, 145 Cal.App.4th at p. 1464.) The court explained: "We are required by rules of statutory interpretation to '[examine] the statute's words' and give them 'a plain and commonsense

8

meaning.' [Citation.] In doing so, we can only conclude that the Legislature intended to exclude 'controlled substances' from [Penal Code] section 4573.5's ambit, as section 4573.5 does exactly that by its reference to 'any drugs, *other than controlled substances.*' " (*Harris*, at p. 1465.)

Given the clear language of the statute, the holding in *Harris* is unremarkable and quite consistent with our rationale in *Fenton.* What is more remarkable is the fact the Attorney General raises the same hackneyed and losing arguments in each case involving contraband in jails or prisons. It certainly may be true that in the late 1940's when the Penal Code section 4573 series of statutes involving drugs and prisons were enacted by the Legislature, there was an over abiding consensus that "the ultimate evil with which the Legislature was concerned was drug use by prisoners" and it adopted "a prophylactic approach to the problem by attacking the very presence of drugs and drug paraphernalia in prisons and jails." (*Gutierrez, supra*, 52 Cal.App.4th at p. 386.) But these statutes preceded by decades a gradual change in attitude toward first, the medicinal use of cannabis in the Compassionate Use Act of 1996 (Prop. 215, as approved by the voters, Gen. Elec. (Nov. 5, 1996)) and, more recently, the decriminalization of the possession of less than an ounce of cannabis, in Proposition 64. Yet the Attorney General insists once again that any interpretation of Health and Safety Code section 11362.1 that possession of cannabis in a prison or jail is not a felony contravenes the very purpose of Penal Code section 4573.6 and its pals, the entire series of related statutes. He argued further "that to construe the statutes as defendant urges would 'effectively nullify the purpose of these statutes,' and result in an 'absurd loophole' that prevents correctional officials from policing medical marijuana in correctional facilities." (*Harris, supra*, 145 Cal.App.4th at p. 1465.)

In *Harris*, as in *Fenton*, the court rejected the Attorney General's arguments. "While we agree that the statutes must be read together, we disagree with the remainder of the People's analysis. The People's interpretation is obviously incorrect in light of

9

[Penal Code] section 4573.5's plainly worded exclusion of controlled substances, which contains no ambiguity whatsoever. To add the qualification proposed by the People would require that we step beyond our judicial function and rewrite the statute, which we cannot do." (*Harris, supra*, 145 Cal.App.4th at p. 1465.)

The court also refused to declare the controlled substances exception set forth in Penal Code section 4573.5 to be absurd. "To the contrary, it is conceivable that the Legislature has declined to criminalize the bringing of certain controlled substances, possession of which is allowed as stated in Division 10, into penal institutions and the like so as not to unnecessarily subject their possessors to criminal sanctions. This is also consistent with [*sic*] electorate's disinclination to criminalize possession of medical marijuana as indicated in Health and Safety Code section 11362.5, which states as one of its purposes '[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.' " (*Harris, supra*, 145 Cal.App.4th at p. 1466.)

Finally, the Attorney General voiced the same concern he voices here—that correctional officials will lose control over their facilities if we conclude the electorate decriminalized possession of less than an ounce of cannabis. But as we pointed out in *Fenton*, and the court in *Harris* agreed, rules prohibiting the possession of cannabis can be established and managed administratively. (*Harris, supra*, 145 Cal.App.4th at p. 1467.) Just because the electorate no longer characterizes possession of small amounts of cannabis as felonious conduct does not preclude prison authorities from banning possession to maintain order and safety in the prisons and other penal institutions.

The plain language of Proposition 64 is clear. The plain meaning of two apposite cases is clear. And both lead to the inescapable conclusion that possession of less than one ounce of cannabis in prison or a similar penal institution is not a felony. Nevertheless, we must address each of the arguments the Attorney General offers to avoid what we believe is the plain meaning of the statute.

10

## PLAIN MEANING

### A. Playing with Syntax

*"The Nearest-Reasonable-Referent Canon."* In order to combat the plain meaning of Proposition 64, the Attorney General deploys a little-known canon of statutory construction in an effort to muddle the meaning of the statute. The argument itself is a difficult puzzle to assemble. The pieces are something like this. The nearest-reasonable-referent canon states that when a statute's " 'syntax involves something other than a parallel series of nouns or verbs, a . . . modifier normally applies only to the nearest reasonable referent.' " (*Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 288.) The Attorney General argues that the canon applies to the syntax of Penal Code section 4573.6 because it contains a noun ("any controlled substances"), a modifier ("the possession of which is prohibited by Division 10"), and then more nouns (any "device, contrivance . . .").

According to the Attorney General, the division 10 language only applies to its closest referent and that referent is the phrase "controlled substances." From here, the Attorney General takes a huge leap to suggest that given the arrangement of the words (the division 10 language only modifying controlled substances), as long as division 10 contains some ban on the possession of cannabis, Penal Code section 4573.6 bans any possession of it in prison.

We think what the Attorney General is saying is that the application of this little-used canon means that since Penal Code section 4573.6 criminalizes possession of any controlled substances prohibited by division 10 if a controlled substance is taken off the list of prohibited substances except in limited circumstances for certain people, the fact that some people in those limited circumstances cannot possess cannabis means that Penal Code section 4573.6 bans any possession of cannabis in prison. In other words, because there are circumstances, not present here, where someone cannot possess

11

cannabis vis-á-vis Penal Code sections 4573.2, 4573.3, 4573.4, 4573.8, or 4573.9, then division 10 bans cannabis in prison.  This is so, according to the Attorney General, because as long as division 10 continues to ban cannabis in some contexts, the division 10 language includes cannabis and Penal Code section 4573.6 imports the global ban.

The argument flies in the face of the plain language of the statute and common sense.  In essence, the Attorney General would have Penal Code section 4573.6 read: "Any person who knowingly has in his or her possession in any state prison [or similar facility] any controlled substances, the possession of which is prohibited *in some circumstances* by Division 10 (commencing with Section 11000) of the Health and Safety Code . . . is guilty of a felony . . . ."  We agree with defendants that the inserted language is made out of whole cloth.  Had the Legislature intended the statute to apply to controlled substances, the possession of which is prohibited *in some circumstances* by division 10, it would have said so.  It did not.  Rather the insertion of the qualifier "prohibited by" before the reference to division 10 means that it limits the criminalized controlled substances to those prohibited by division 10.  Possession of less than one ounce of cannabis is no longer prohibited by division 10, and therefore, according to the plain language of Penal Code section 4573.6, it is no longer a felony to possess less than one ounce in prison.

"*The Pertaining Exception.*"  The Attorney General's second syntactical argument involves the exceptions set forth in Health and Safety Code section 11362.1.  The argument goes like this.  Health and Safety Code section 11362.1 decriminalizes the possession of less than one ounce of cannabis except in the limited circumstances set forth in Health and Safety Code sections 11362.2, 11362.3, 11362.4, and 11362.45.  Section 11362.1 begins:  "Subject to Sections 11362.2, 11362.3, 11362.4, and 11362.45, but notwithstanding any other provision of law, it shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older . . . ."  (Health & Saf. Code, § 11362.1, subd. (a).)  As described above, Health and

12

Safety Code section 11362.45 states that: "Section 11362.1 does not amend, repeal, affect, restrict, or preempt: [¶] . . . [¶] (d) Laws *pertaining to* smoking or ingesting cannabis or cannabis products on the grounds of, or within, any facility or institution under the jurisdiction of the Department of Corrections and Rehabilitation or the Division of Juvenile Justice, or on the grounds of, or within, any other facility or institution referenced in Section 4573 of the Penal Code." (Health & Saf. Code, § 11362.45, subd. (d), italics added.) The Attorney General maintains that use of the phrase "pertaining to" enlarges the scope of the exception from smoking and ingesting to include possession. In other words, rather than simply including possession along with smoking and ingesting to retain the illegality of these acts in prison, the Attorney General would have us find that the drafters of Proposition 64 intended to include possession not by naming it, but by the use of a tangential reference "pertaining to."

This we cannot do, and the rules of statutory construction clearly forbid it. If there is no ambiguity in a statute, we must presume the drafters mean what they wrote and the plain meaning of the words prevail. (*Harris, supra*, 145 Cal.App.4th at p. 1463.) " ' "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' " ' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.) Here there is no ambiguity. We agree with defendants it stretches the imagination to conclude that the drafters listed two distinct activities, "smoking or ingesting," intending to include a third distinct activity, possession, by using the vague reference "pertaining to." This is particularly suspect given that the drafters differentiated smoking or ingesting from possession in other sections and when they wanted to denote possession, they explicitly said so. For example, they indicated that it was still illegal to "[p]ossess, smoke, or ingest cannabis or cannabis products" on school grounds and other similar places. (Health & Saf. Code, § 11362.3, subd. (a)(5).) Similarly, the drafters specified it remained illegal to "[p]ossess an open container or open package of cannabis or cannabis products" in and around motor vehicles. (Health & Saf. Code, § 11362.3, subd. (a)(4).)

13

The Attorney General insists, however, that without possession, Health and Safety Code section 11362.45, subdivision (d) is mere surplusage; the language "pertaining to" must have a purpose. It does. The purpose of the language is to describe the vast array of means of consumption and consumption, not possession, is the act the voters determined should remain criminalized if the user is in prison. We agree with defendants that consumption can be achieved in ways not strictly involving smoking or ingesting, such as inhaled as a non-burning vapor or applied topically such that it is absorbed through the skin. By including the language "pertaining to smoking and ingesting," the drafters allowed for these various forms of consumption in prison to remain unlawful.

The rules of statutory construction, whether commonly or rarely utilized, are designed to help us ascertain the intent of the drafters. They are not to be used to subvert the ordinary meaning of words or to make a mockery of the syntax and grammar. In this case, we will not use these rules to distort the plain meaning of a statute intended to decriminalize the possession of a very small amount of marijuana, even in prison. Had the drafters intended for possession to remain a felony, along with consumption, they would have said so. By expressly providing that laws pertaining to smoking and ingesting cannabis in prison are not affected by the decriminalization of possession of less than an ounce of cannabis, the drafters and voters demonstrated they were aware of the prison population and chose to distinguish possession from consumption. Thus, the plain meaning of the language prevails.

## B. Public Policy

The Attorney General obviously believes that possession of even a small amount of cannabis cannot be countenanced in prison. As a matter of public policy, his position may be sound. As a matter of prison administration, his position may be strategic. But as a matter of statutory construction—which pits the role of legislators against the role of judges—his position must be rejected. Here the voters, exercising their constitutional

14

right to legislate through the initiative process, have changed the law and, in doing so, simply and plainly have decided to decriminalize that which the Attorney General would not. Judges cannot rewrite the statutes to conform to either our, or the Attorney General's, notion of wise drug policy. We briefly address the Attorney General's different iterations of the same basic notion that possession of cannabis in prison is a bad idea.

The Attorney General insists the original purpose of Penal Code section 4573.6 to ban possession of cannabis, among other controlled substances, was fortified in 1990 when the penalties were raised for the possession of controlled substances prohibited by division 10 and other drugs and alcohol were moved to section 4573.8, a section with lower penalties. (Stats. 1990, ch. 1580, §§ 4 & 5, pp. 7555-7556.) He urges us to give a broad interpretation to the statute, sympathetic to a legislative intent to keep cannabis out of prisons.

The Attorney General's focus is misplaced. The question before us is not what the Legislature intended in 1949 or 1990, but whether the voters amended Penal Code section 4573.6 by passing Proposition 64 in 2016. The drafters and voters are entitled to opt for a different approach and, in this case, they did just that. They amended the statute to eliminate criminal sanctions for possession of less than an ounce of marijuana and they retained criminal sanctions for possessing more than an ounce or for smoking or ingesting it. The fact the Attorney General may not agree with the voters does not empower us to rewrite the initiative.

The Attorney General claims that a plain reading of the statute leads to absurd results that allow us to override the electorate's decision. We are not at liberty to characterize the effects of a statute as absurd because we, or the Attorney General, disagree with the policy. Here, the Attorney General forecasts a formidable increase in smuggling cannabis into the prisons along with other banned items such as cell phones, alcohol, and cigarettes. He also laments the additional burden on prison personnel in

15

determining the age of the inmate in possession of the cannabis and how much it weighs. He insists that internal prison regulations are not sufficient to deter possession and sales of cannabis; only the criminal law has the requisite teeth to stem the flow of cannabis throughout the prisons and other detention facilities.

The Attorney General makes a strong case appropriate for legislative hearings or a voter pamphlet. But whether he can offer sufficient evidentiary support for his position is an entirely different question which highlights how inappropriate his arguments are in persuading us that the plain meaning of Proposition 64 is absurd. Defendants raise more pertinent questions. "Do cigarettes, which are also contraband but not illegal in prisons, 'pour into prisons through the breach?' And how can it be that inmates knowing they can possess cannabis without criminal sanction will mean 'they will be more likely to try to possess banned items [such as cell phones, alcohol, and cigarettes] that society regulates less strictly?' " Simply put, the Attorney General fails to demonstrate an absurdity.

Neither does the Attorney General's contempt for replacing criminal sanctions with institutional disciplinary rules amount to an absurdity. Bringing less than an ounce of cannabis into a prison and giving it away in prison are serious rule violations that result in significant consequences for both inmates and visitors. (CDCR's Department Operations Manual, ch. 5, § 52080.5; Cal. Code Regs., tit. 15, §§ 3176, 3315, 3323, & 3335.) "[S]muggling a prescribed controlled substance into a penal institution is not deemed desirable or permissible just because the Legislature, whether or not inadvertently, has not made it a felony." (*Fenton, supra*, 20 Cal.App.4th at p. 970.) While some may disagree with the electorate's decriminalization of the possession of a small amount of cannabis that disagreement does not translate into absurdity. It merely reflects different policy choices and requires us to remain loyal to the plain language the drafters and voters chose in Proposition 64 to amend Penal Code section 4573.6.

The Attorney General asserts there is no evidence in Proposition 64's official title and summary, the Legislative Analyst's analysis, or any of the arguments for or against

16

the proposition in the voters' pamphlets of an intent to decriminalize possession of cannabis in prison. The Attorney General glosses over the plain language of the proposition itself, which happens to state the voters' intention quite clearly. Nothing more is needed when the words themselves reflect the voters' intent.

Finally, the Attorney General maintains that importing Proposition 64's legalization of cannabis possession into prison would undercut the purpose of Penal Code section 4573.6 in four ways. Implicit in his argument is the accusation that the court is importing Proposition 64's legalization, when in fact, it is the plain language of Penal Code section 4573.6 which imports division 10 and Proposition 64 which amends that section. The four ways the Attorney General suggests the purpose of Penal Code section 4573.6 would be undercut are all variations of the policy debate: that section 4573.6's prophylactic approach to keeping cannabis out of prison would be undermined; that deterrence would be weakened; that bans on the possession of other contraband would be eroded; and that enforcement would be difficult. The Attorney General's arguments are redundant and so is our response. We cannot weigh in on policy debates.

In sum, the Attorney General has offered no viable way to escape the plain language of the statute. None of the policy arguments he advances can undermine the will of the electorate and none of the disasters he foresees constitute the type of absurdity that allows us to disregard the voters' clear intent. We therefore reject any suggestion that the legislative history or broader purposes of Penal Code section 4573.6 preclude the amendment rightfully imposed by the initiative process.

In so holding we part company with our colleagues in *People v. Perry* (2019) 32 Cal.App.5th 885, who embrace the arguments advanced by the Attorney General that we reject. There may be sound policy reasons for the conclusions reached in that case, but our task is to apply the language of the initiative as written. The remedy for clearly written language that achieves a dubious policy outcome is not judicial intervention but correction by the people or the Legislature.

17

# PRECEDENT

As we described in some length above, we rejected many of the Attorney General's arguments in a remarkably similar case, *Fenton, supra*, 20 Cal.App.4th 965. We need not repeat that analysis here. What we do address is the Attorney General's contention that we should either distinguish *Fenton* or now reject it. We conclude *Fenton* remains as vibrant today as it was in 1993 and there are no pertinent facts or compelling reasons to distinguish it from the case at hand.

The Attorney General argues that because we engaged in an incomplete and incorrect textual analysis of the division 10 language in *Fenton* based on a faulty assumption we failed to explain, we should not repeat the error by utilizing the same rationale as an authoritative interpretation of the division 10 language. The unexplained, but faulty, assumption, according to the Attorney General, is that if an exception to a possession ban in division 10 applied to a particular individual that exception carried over to Penal Code section 4573. We think what the Attorney General is arguing, although it is difficult to decipher, is that as long as there is any exception to a possession ban in division 10 then the controlled substance remains prohibited by division 10 and, even if the exception to the ban does not apply to defendants, the wholesale ban on possession of cannabis in prison remains intact.

It is true we did not discuss this farfetched argument in *Fenton* presumably because it was not raised and was and remains completely without merit. Instead we explained: "Contrary to the Attorney General's assertion, the reference to division 10 must include the prescription exception because [Penal Code] section 4573 imports the prohibition against possession of controlled substances not the list of controlled substances. Thus, the 'plain meaning' of the statute is that one may bring controlled substances into a penal institution if an exception contained in division 10 applies. Here, one does. Health and Safety Code section 11350 does not prohibit possession of a controlled substance with a prescription." (*Fenton, supra*, 20 Cal.App.4th at p. 969.)

18

Our rationale is as sound today.  We remain bound to apply the plain meaning of the statute.  To say that any exception to relieving the ban on possession means the ban applies to controlled substances no longer banned by division 10 defies the plain meaning as well as common sense.  We cannot ignore binding precedent and the plain language of a statute based on the intensity of the Attorney General's passion to criminalize an act the electorate has decided no longer merits treatment as a felony.

Nor does *People v. Low* (2010) 49 Cal.4th 372 suggest otherwise.  No one disputes that the original intent of the Penal Code section 4573 et seq. series of statutes was prophylactic.  In other words, these statutes were designed to attack the presence of controlled substances in the penal system.  But the intent of the Legislature in enacting Penal Code section 4573 et seq., including 4573.6, is not at issue here.  The question is whether the electorate intended to amend that statute and the plain language of the statute suggests that it did.  The Supreme Court said nothing about the meaning of the division 10 language in *Low* and cited other aspects of *Fenton* with approval. (*Low*, at p. 383.)  The case says nothing to undermine or weaken the precedential value of *Fenton*.

## DISPOSITION

The trial court's rulings dismissing defendants' petitions to dismiss their convictions for violations of Penal Code section 4573.6 are reversed and the cases are remanded for the trial court to enter orders granting the petitions for relief pursuant to Health and Safety Code section 11361.8, subdivision (a). The conduct underlying their convictions is no longer criminal under Penal Code section 4573.6.

      RAYE      , P. J.

We concur:

      ROBIE      , J.

      BUTZ      , J.