Filed 9/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B290895 |
| Plaintiff and Respondent, | (Super. Ct. No. 17F-04481) (San Luis Obispo County) |
| v. | |
| ROBERT EUGENE TORRES, JR., | |
| Defendant and Appellant. | |

Robert Eugene Torres, Jr., no doubt, has some thought disorder. But his case should not now be diverted from the traditional criminal law process. We hold that the newly enacted mental health diversion statute (Pen. Code, § 1001.36)[1] cannot be applied on appeal after conviction and sentence. A contrary ruling would do violence to the language of the statute and potentially violate double jeopardy principles. Appellant was convicted by jury for discharging a firearm with gross negligence (count 1: § 246.3, subd. (a)), unlawfully causing a fire to an inhabited structure or property (count 2; § 452, subd. (b)),

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

unlawfully setting fire to property of another (counts 3 & 4; § 452, subd. (d)), three counts of corporal injury to a spouse (§ 273.5, subd. (a); counts 6, 12, 13), assault with a deadly weapon (count 7; § 245, subd. (a)(1)), dissuading a witness from reporting a crime (count 9; § 136.1, subd. (b)(1)), misdemeanor false imprisonment (count 10; § 236), and battery on a spouse (count 11; § 243, subd. (e)(1)).  Appellant entered a plea to felony vandalism (count 5; § 594, subd. (b)(1)).  He was sentenced to nine years state prison, and six months county jail to be served concurrent to the prison term.  We reverse the misdemeanor conviction on count 4 for unlawfully setting fire to the property of another, strike the six-month jail sentence with respect to count 4, and affirm the judgment as modified.  (§ 1260.)  The sentence remains the same: nine years state prison.

*Facts*

Appellant and his wife lived in a rented condominium in San Luis Obispo.  From July 2015 to March 2017, wife was treated for brain and lung cancer which caused her to suffer vertigo and equilibrium problems, thin and dry skin, and weight loss.  At first, appellant acted as a responsible caregiver for her.  But his attitude toward wife changed.  The continuing predicament precipitated a reign of cruelty starting in December 2016.  Appellant grabbed wife by the arms, pinned her down on the bed, spit in her face, and while holding a pillow over wife's face said "'Aren't you dead yet.'"  Her forearms were "ripped" and bruised.  Appellant told wife that if she told anyone about what happened "it would be the last thing [she] did."

In February 2017, appellant again pinned wife down on a bed, held a pillow over her face, and ripped the skin on her

2

forearms. She managed to kick free but feared that appellant would kill her if she reported the domestic violence.

In March 2017, there were more acts of violence. Appellant blocked wife from entering the bathroom. Appellant stepped to the side, grabbed wife by the shoulders and shoved her against the vanity. He remained in the bathroom doorway, blocked wife from leaving, and threatened her and said "'Aren't you dead yet?'"

On another occasion appellant shoved wife down on a bed and slammed the television remote control down on her foot. On yet another day, appellant threw wife on the bed, pinned her down, and tried to suffocate her with a pillow. Appellant threatened to shoot wife with a pistol, pulled the trigger, and said "'See, it's not loaded.'" Appellant ranted on a daily basis and said he wished she was dead.

On April 18, 2017 appellant pinned wife down on the bed and held a pillow over her face. Wife almost blacked out. The next day, appellant slammed wife into the bedroom wall, dragged her out the house, and locked the front door. Wife beat on the door and begged to be let inside for 10 to 15 minutes. When a friend arrived at noon to pick her up for a lunch date, wife was sitting in the front yard with suitcases and boxes. Wife looked "broken" and had a swollen ear. Wife moved out to live with her parents. She eventually reported the matter to the police.

On May 11, 2017, a neighbor saw broken furniture, a coffee pot, a spice rack and a wooden chair outside the condominium. He called 911 to report that something was smoking behind appellant's fence. San Luis Obispo Police Officer Edwards responded to the call and saw household items

and broken chairs in the yard, smoldering.  Appellant was ordered to put out the fire.

A week later, San Luis Obispo Police Officer Villanueva responded to a midnight call that gun shots had been fired at the condominium.  Officer Villanueva heard the sound of breaking glass, loud thuds, and four gunshots.  The officer then saw appellant walk into the backyard, raise his arm, and fire a shot.

Appellant told Detective Vitale that he pointed a handgun "up towards the hill" and fired eight rounds.  The detective visited the condominium and saw broken windows, holes in the walls, missing doors and light fixtures, and noticed that the kitchen cabinet and stovetop were missing.  The living room carpet had a large burn mark and the word "liar" was spray painted on a wall.  Detective Vitale found a .45 caliber semiautomatic handgun in a laundry basket and a charred pile of furniture, clothing, and household goods.  The city fire marshal opined that the carpet fire was started with an ignitable fluid and that the furniture fire was not started by someone dropping a lit match, as appellant claimed.

*Section 1001.36 Mental Health Diversion*

Appellant was sentenced on June 12, 2018 and contends that section 1001.36 requires that his conviction be conditionally reversed to determine whether appellant qualifies for mental health diversion.  Section 1001.36 was enacted on June 27, 2018 and authorizes trial courts to grant "pretrial diversion" to defendants diagnosed with certain mental disorders. (See Stats. 2018, ch. 34, § 24; *People v. Cawkwell* (2019) 34 Cal.App.5th 1048, 1053.)  Relying on *People v. Frahs* (2018) 27 Cal.App.5th 784 (*Frahs*), review granted Dec. 27, 2018, S252220,

appellant argues that section 1001.36 applies to criminal convictions that are not yet final.

In *People v. Craine* (2019) 35 Cal.App.5th 744, the Fifth District Court of Appeal held that section 1001.36 was not intended to apply to defendants tried and convicted before the enactment of the statute. "The primary legislative goal of diverting mentally ill defendants from the criminal justice system through preadjudicative intervention programs cannot be achieved once the defendant has been tried, adjudged guilty, and sentenced." (*Id*. at pp. 749-750.) We agree with the holding and analysis in *Craine* and disagree with the recent case of *People v. Weaver* (2019) 36 Cal.App.5th 1103. We hold that section 1001.36 does not apply to defendants tried, convicted, and sentenced before June 27, 2018, the effective date of section 1001.36. "[P]retrial diversion is literally and functionally impossible once a defendant has been tried, found guilty, and sentenced. Upon reaching this point of 'adjudication,' the 'prosecution' is over and there is nothing left to postpone. (§ 1001.36, subd. (c).)" (*Id*. at p. 756.)

We offer a further rationale for our holding. Double jeopardy principles compel non-retroactivity. (See Cal. Const., art. I, § 15 ["Persons may not twice be put in jeopardy for the same offense]; § 1023.) Jeopardy attaches when the jury is empanelled and sworn. (*Larios v. Superior Court of Ventura County* (1979) 24 Cal.3d 324, 329.) "The right not to be placed twice in jeopardy for the same offense is as sacred as the right to trial by jury." (*Ibid*.) Appellant was fairly tried and fairly convicted. The evidence is sufficient to support all but one of the jury verdicts and jeopardy has attached as a matter of law. (See *People v. Hernandez* (2003) 30 Cal.4th 1, 6-7.) Section 1001.36,

5

subdivision (c) states that "'pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process *from the point at which the accused is charged until adjudication*, to allow the defendant to undergo mental health treatment . . . ." (Italics added.) "Until adjudication" means before the jury is impaneled and sworn. If we agreed with appellant and he was granted mental health diversion and he later violated diversion, double jeopardy principles would bar a new trial or conviction. This eviscerate the statute's enforcement mechanism.

Appellant contends that mental health diversion may be invoked *after* guilt is adjudicated and sentenced, but this would violate the cardinal rule of statutory construction that courts may not add words to a statute. (*People v. Guzman* (2005) 35 Cal.4th 577, 587; *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [courts do not sit as super-legislatures].) We cannot "add" a waiver of jeopardy amendment to section 1001.36 for those defendants seeking diversion after conviction and sentence. Nor can we say that he who asks for such treatment impliedly "consents" to a waiver of jeopardy. In the cases dealing with "consent" all note that there was something wrong with the trial for which the defendant sought a new trial. There is nothing wrong here.

Sentencing occurs after adjudication and section 1001.36, subdivision (c) provides that mental health diversion may be ordered at any point in the judicial process "*until adjudication.*" We, accordingly, reject the argument that section 1001.36 is an ameliorative statute that lessens punishment and may be retroactively invoked after sentencing. (Compare *Frahs*, *supra*, 27 Cal.App.5th at p. 791 [mental health diversion under

6

section 1001.36 does not lessen the punishment for a particular crime but is an "'ameliorating benefit'"], with *In re M.S.* (2019) 32 Cal.App.5th 1177, 1192 [section 1001.36 does not apply to juvenile dependency proceeding which is not a criminal proceeding].) "[T]he primary purpose of the diversion statutes is to treat the mentally ill adult outside the criminal justice system rather than to punish them inside the system." (*Id.* at p. 1193.)

*Appellant's Lack of Mental Illness*

Even if we assumed that section 1001.36 is retroactive, appellant is not eligible for mental health diversion because he does not suffer from a qualifying mental disorder that played a significant role in the commission of the charged offenses. (§ 1001.36, subds. (b)(1) & (b)(2); *Frahs, supra,* 27 Cal.App.5th at p. 791 [remand is appropriate when "the record affirmatively discloses that [defendant] appears to meet at least one of the threshold requirements (a diagnosed mental disorder)"].) As reflected in the probation sentencing report, appellant denied any history of mental illness and insisted that he was of sound mind and fully aware of his actions during the commission of the crimes. Before trial, three doctors examined appellant to determine his competency to stand trial (§ 1368) but none of the doctors diagnosed appellant as suffering from a mental disorder identified in the Diagnostic and Statistical Manual of Mental Disorders.[2] (§ 1001.36, subd. (b)(1)(A).)

_____

[2] Doctor Brandi Mathews reported that appellant suffered from a thought disorder. Doctor David Fennell reported that appellant suffered from a "circumstantial thought process" consistent with a brief reactive psychosis. Doctor Kevin Perry reported that appellant suffered no significant psychiatric impairment and offered no diagnosis.

*Discharging a Firearm with Gross Negligence*

Appellant argues that the evidence does not support his conviction for discharging a firearm with gross negligence (count 1; § 246.3). As in any substantial evidence case, we draw all reasonable inferences and resolve all conflicts in favor the judgment. (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.) "The test is whether substantial evidence supports the [jury's] decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)

Appellant asserts that firing a handgun into the air does not pose a significant risk of injury or death to others. (§ 246.3.) The jury was instructed that gross negligence "involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with gross negligence when: [¶] 1. He or she acts in a reckless way that creates a high risk of death or great bodily injury. [¶] AND [¶] 2. A reasonable person would have known that acting in that way would create such a risk." (CALCRIM No. 970.)

In *People v. Alonzo* (1993) 13 Cal.App.4th 535, defendant discharged a handgun into the air in front of a 7-Eleven store at 2:00 in the morning. There were other commercial businesses nearby. (*Id*. at pp. 537-538.) The Court of Appeal held that "shooting a gun in a commercial area where people are present constitutes gross negligence . . . . [¶] . . . The fact that the gun was pointed up in the air does not change this reality. In fact, this was precisely the type of behavior that the statute was intended to deter." (*Id*. at p. 540.)

Appellant claims the shots were fired straight up and away from the city, but the jury discredited this "defense"

argument.  Appellant lived in a densely populated residential area.  Officer Villanueva responded to the 911 call, heard someone fire four shots inside the garage, and saw appellant step out of the garage and fire a shot into the air.  Fearing for their safety, Officer Villanueva and his fellow officers took cover behind their patrol cars.

It took no leap of logic for the jury to find that appellant fired the shots in a grossly negligent manner and that it created a risk of death or great bodily injury.  "The phenomenon that gave rise to [section 246.3] was celebratory gunfire in an urban setting.  It seems clear that the Legislature intended to proscribe such grossly negligent conduct precisely because it could cause injury or death. . . .  No one knows where shots fired recklessly into the air are likely to land."  (*People v. Ramirez* (2009) 45 Cal.4th 980, 990 (*Ramirez*).)  In *Ramirez*, our Supreme Court rejected the argument that section 246.3, subdivision (a), requires "'the actual presence of a person in harm's way'" of "that a given person was actually . . . endangered."  (*Ibid.*)  Instead, the question is whether "it was reasonably foreseeable that human injury or death might result under the circumstances?"  (*Ibid.*)

*Dissuading a Witness*

Appellant argues that the evidence is insufficient to convict on count 9 for dissuading a witness (§ 136.1, subd. (b)(1)) because the prosecution failed to prove the offense was committed reasonably close to the time alleged in the First Amended Information, i.e. "[on] or between April 1, 2017 and April 30, 2017."  Appellant threatened to kill wife in December 2016 if she told anyone about the domestic violence and continued to threaten her in February and March 2017.  Wife was threatened

9

with a pistol, suffocated with a pillow, and thrown around the house on numerous occasions including the last incident on April 19, 2017.  Although there was no verbal threat to kill on April 19, 2017, appellant by his actions and words discouraged wife from reporting the domestic violence.  (§ 136.1, subd. (b).)  The incongruence, if any, between the alleged dates (on or between April 1, 2017 and April 30, 2017) and the trial evidence "is nothing more than a pleading error."  (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1022.)

The jury was instructed that the prosecution was not required to prove that count 9 took place exactly on the day or dates alleged in the information "but only that it happened reasonably close to that day or days."  (CALCRIM No. 207.)  That is an accurate statement of law because time is not a material ingredient of the offense.  (§ 955; *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1304.)  Section 136.1 contemplates a continuous course of conduct or a series of acts over a period of time.  (*People v. Salvato* (1991) 234 Cal.App.3d 872, 883.)  "The language of section 136.1 focuses on an unlawful goal or effect, the prevention of testimony rather than on any particular action taken to produce that [result].  'Prevent' and 'dissuade' denote conduct which can occur over a period of time as well as instantaneously.  The gravamen of the offense is the cumulative outcome of any number of acts, any one of which alone might not be criminal."  (*Ibid*.)  Appellant, by his words and action continuously discouraged wife from reporting the domestic violence from December 2016 through April 19, 2017, the day he ejected wife out of the condominium.

*Multiple Convictions for Setting Fire to*
*Property of Another:  Counts 3 & 4*

Appellant asserts that the act of setting fire to a pile of property, some of which belonged to wife and some of which belonged to the landlord, does not support two convictions for the same offense, i.e., counts 3 and 4 (§ 452, subd. (d)).  We agree.  Section 452 provides that a person is guilty of unlawful causing a fire if he or she sets fire to or burns another person's property, including a spouse's community property interest in personal property.  The jury was so instructed (CALCRIM No. 1531) and it is uncontroverted that appellant set a single fire that burned a pile of property belonging to wife and the landlord.  Although section 954 "'authorizes multiple convictions for different or distinct offenses, [it] does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' [Citation.]" (*People v. Vidana* (2016) 1 Cal.5th 632, 650.)  "'If only a single act is charged as the basis for multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. . . .' [Citation.]" (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)  The error cannot be corrected by simply staying the sentence on count 3 or count 4 (§ 654) because counts 3 and 4 are not crimes of violence committed against different victims. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 541-542.)

The Attorney General argues that the act of setting a single fire can be parsed into two separate acts because the fire burned property owned by two individuals.[3]  There is no

---

[3] The convictions on counts 3 and 4 are based on the burnt property on the yard deck.  Appellant also burned the carpet inside the condominium, but that pertained to count 2 for arson

authority for that.  (See *People v. Rouser* (1997) 59 Cal.App.4th 1065, 1073 ["A single crime cannot be fragmented into more than one offense"].)  The Attorney General's reliance on *People v. Bailey* (1961) 55 Cal.2d 514 is misplaced.  Although the *Bailey* doctrine permits the aggregation of certain misdemeanors into a single felony offense when the misdemeanors are committed pursuant to one general intent, no felony offense results when two counts of section 452, subdivision (d) are aggregated.  Because appellant can only be convicted of a single violation of section 452, subdivision (d), we reverse the conviction on count 4 (setting fire to the landlord's property) and affirm the conviction on count 3 (setting fire to wife's property).

### False Imprisonment

Appellant argues that the conviction for misdemeanor false imprisonment (count 10; § 236) must be reversed because appellant only blocked wife's access to the bathroom and wife was free to go elsewhere in the house.  Wife stated that appellant blocked the doorway to the bathroom so she could not use the toilet.  Appellant eventually allowed wife to use the toilet.  When she did so, appellant grabbed her and shoved her into the bathroom vanity which was the basis for the battery charge (count 11).  Appellant then stood in the bathroom doorway, blocked her from leaving, and "mov[ed] whichever way I would move" by outstretching his arms and threatening her.  "It took a few minutes because he was kind of backing up and trying to keep me from leaving that area."  It is compelling evidence and

---

of an inhabited structure (§ 451, subd. (b)) which includes fixtures such as the yard deck or carpet.  (CALCRIM No. 1502.1.) On count 2, the jury returned a guilty verdict on the lesser offense of setting fire to an inhabited structure.  (§ 452, subd. (b).)

12

supports the conviction for false imprisonment.  (See *People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123 [exercise of express or implied force compelling the victim to remain where he or she does not wish to remain is false imprisonment]; *People v. Fernandez* (1994) 26 Cal.App.4th 710, 717 [same].)

*Dueñas – Present Ability to Pay Fines and Fees*

Appellant argues that the trial court erred in imposing a $320 court operations assessment (§ 1465.8), a $240 criminal conviction assessment (Gov. Code, § 70373), and a $10,000 restitution fine (§ 1202.4) without finding that appellant had the present financial ability to pay.  In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the Court of Appeal concluded that the failure to conduct an ability to pay hearing for driving with a suspended license case violated the due process rights of a homeless probationer.  Unlike *Dueñas*, appellant did not object to the fine and fees, or request a hearing on ability to pay, thus forfeiting the issue.  (See, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 729 [defendant forfeited issue by failing to object to imposition of restitution fine based on inability to pay]; see also *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 [*Dueñas* error forfeited]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [same].)  A timely objection is required to claim constitutional violations, such as appellant makes here.[4]  (*People v. Trujillo*

---

[4]  Appellant's argument that his constitutional right to due process, equal protection and right to be free from excessive fines was forfeited and lacks merit.  Appellant makes no showing that the $10,000 restitution fine is grossly disproportionate to the gravity of the offenses, impacts a fundamental liberty interest, or will result imprisonment or revocation of parole if not paid.  (*Bearden v. Georgia* (1983) 461 U.S. 660, 672-673*; In re Antazo*

13

(2015) 60 Cal.4th 850, 859 [no constitutional rights are implicated by counsel not objecting at sentencing to imposition of fees].) Appellant did not object to the $10,000 restitution fine and cannot be heard to complain that the trial court erred in not considering his ability to pay the $400 court security fee and $300 criminal conviction assessment. (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.)

*Disposition*

The conviction on count 4 for unlawfully setting fire to the property of another (§ 452, subd. (d)) is reversed and the six-month jail sentence on count 4 is stricken. (§ 1260.) The clerk of the superior court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The sentence remains the same: nine years state prison on counts 1, 2, 5, 6, 7, 9, 12 and 13, and concurrent six month jail terms on counts 3, 10, and 11. As modified, the judgment, is affirmed.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.          PERREN, J.

---

(1970) 3 Cal.3d 100,115-116; *People v. Long* (1985) 164 Cal.App.3d 820, 826-827 [rejecting due process challenge to restitution fine]; *People v. Glenn* (1985) 164 Cal.App.3d 736, 739-740 [rejecting equal protection challenge]; *People v. Alford* (2007) 42 Cal.4th 749, 758-759 [court security fee not punishment]; *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112 [court facilities assessment not punishment].)

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____


       Valerie G. Wass, under appointment by the Court of Appeal for Defendant and Appellant.

       Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, David E. Madeo, Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.